Allen Murray Myers, J.
Defendant has moved to dismiss the indictment for lack of jurisdiction and, in the alternative, to suppress inculpatory statements on the ground that they were taken in violation of his constitutional fights. At the hearing, the motion as to statements made by the defendant prior to his arrest (noncustodial) was withdrawn. At the same time the motion with respect to a statement made on December 6, *170 1972, was denied, as was a Wade motion. The only statement remaining for consideration was one made on the date of defendant’s arrest and the motion with respect to that statement has become moot because the People have informed the court that they will not offer those statements at trial, thus consenting to defendant’s motion to suppress the statement.
The motion to dismiss the indictment for lack of jurisdiction is based on three grounds, two of them attacking the constitutionality of a statute and one challenging the court’s jurisdiction based on the facts in this case.
In April, 1972, the Legislature enacted article 5-B of the Judiciary Law (§§ 177-a-177-e), establishing the Special Narcotics Parts of the Supreme Court. Its findings and intent are stated in section 177-a as follows:
“ The legislature hereby finds and declares that an emergency of grave dimensions exists in narcotics law enforcement in cities having a population of one million of more. The overall law enforcemen effort has not been successful in stemming the distribution of narcotic drugs. The legislature finds that the ineffectiveness of official efforts to contain the narcotics traffic is due in significant part to the inability of the overburdened criminal justice system to cope with the enormous volume of narcotics cases.
“ The legislature further finds that this crisis, which transcends the traditional jurisdictional boundaries of the counties wholly contained within such cities having a population of one million or more, demands coordinated prosecution, centralized direction and the infusion of massive new resources.
“ The legislature declares that without these new directions and resources, this crisis will intensify and very shortly overwhelm the already strained criminal justice system.
‘ ‘ Based upon the above findings, the legislature hereby declares that an emergency narcotics court program is required. ’ ’
They are based on statistics which merit a brief exposition.
The “ Preliminary Report of the New York State Commission of Investigation Concerning its Investigation of Drug Law Enforcement ’ ’, dated March 19,1971, reveals that in 1968, there were 27,292 arrests for narcotics violations; in 1969, there were 48,482 arrests, and in 1970 there were 73,848 arrests. While the arrest figures are impressive, a majority of the misdemeanor cases were dismissed and only a small proportion of the felony arrests resulted in dispositions, the bulk of them by plea. While the statistics in the report are not as complete as one would like, they do clearly demonstrate the crisis reached in narcotics *171 enforcement on all levels from preliminary police investigation through the trial and sentencing of defendants. The available manpower procedures were grossly inadequate for dealing with the problem.
In accordance with the legislative authorization (Judiciary Law, § 177-b), Special Narcotics Parts of the Supreme Court were established in New York City. Such parts exist in. each of the city’s five counties and are commonly called “ decentralized ” Special Narcotics Parts. Additional parts were established in New York County, which are known as “ centralized ” Special Narcotics Parts. Each Special Narcotics Part, whether designated “ decentralized ” or “ centralized,” is a court of city-wide jurisdiction with respect to the trial of narcotics indictments (see Judiciary Law, § 177-b, subds. 2, 3), Any narcotics indictment may be assigned to any Special Narcotics Part, regardless of location (Judiciary Law, § 177-b, subd. 2), and the trial of an indictment in a Special Narcotics Part is deemed to be a trial in the county wherein the indictment was filed (Judiciary Law, § 177-b, subd. 3). In addition, a Grand Jury duly impaneled for a Special Narcotics Part may exercise the power to indictment for narcotics offenses in any eóunty in New York City (Judiciary Law, § 177-d, subd. [iii]). And, every Assistant District Attorney prosecuting cases in the centralized parts has been appointed an Assistant District Attorney by each of the city’s five District Attorneys. It is this framework which the defendant attacks as unconstitutional.
The discussion of the validity of these enactments should be viewed against the backdrop of the principle that legislative enactments are presumed valid and that the burden is upon the person asserting that they are unconstitutional to demonstrate that hypothesis beyond a reasonable doubt (Matter of Van Berkel v. Power, 16 N Y 2d 37).
The first issue raised is whether article 5-B of the Judiciary Law which creates the “ Special Narcotics Parts of the Supreme Court in Cities with a Population of One Million or More ” violates section 17 of article III of the New York State Constitution which prohibits the Legislature from passing a private or local bill providing for changes of venue in civil or criminal cases.
The manifest purpose of section 17 of article III of the New York State Constitution was to prevent the passage of local or private bills concerning subjects enumerated therein and to confine the power of the Legislature to the enactment of general statutes conducive to the welfare of the State as a *172 whole. It was also designed to prevent the passage of bills affording privileges to special interest groups. Section 17 of article III must be read in light of the fact that the Legislature in the nineteenth century was persistently pressured by particular interested parties to pass bills which, would provide individual or private benefits in the enumerated categories. While no documentary evidence as to the reason the “ venue ” provision was included has been brought to my attention, it is reasonable to assume that it was intended to restrict the Legislature from changing venue for particular individuals or in specific cases. In this, sense, article 5-B cannot be regarded^ as a private bill changing venue. Insofar as New York City is concerned, the statute presently applies uniformly to all narcotics defendants, rather than to a particular defendant or case.
The Court of Appeals, in Farrington v. Pinckney (1 N Y 2d 74, 78) held that:
“ a law which applies to all persons^ places or things in the State is general. An act, however, which, by its terms, applies only to a named person, place or thing is clearly local
# * #
“ an act need not apply to all persons, places or things in the State to be deemed general, if it -only apply to a class, entry into which was governed by conformity or compliance with specified conditions * * * A typical condition common to the class, where a placé happened to have been concerned, was that the place have a given population (pp. 78-79)
# *. *
“ The class constructed by the act may be based, on population, and will be upheld, if conditions, because of such population, can be recognized as possibly common to a class and are reasonably related to the subject of the statute. Separate classes based on population are permissible where conditions due to differences in population might reasonably require differentiation in laws applicable to them. However, where the reference to population serves only to designate and identify the place to be affected, it will be deemed a local act. In the latter situation, the purported class would be one in name only— a local law masquerading as general ” (pp. 80-81; see, also, Stapleton v. Pinckney, 293 N. Y. 330; Matter of Henneberger, 155 N. Y. 420).
Although New York City is the only locality in New York State with a population of one million or more and, therefore, the only city to which article 5-B of the Judiciary Law is appli *173 cable, that fact in and of itself does not make the statute a local law (Adler v. Deegan, 251 N. Y. 467; see, also, Matter of McAneny v. Board of Estimate, 232 N. Y. 377; Matter of Ahern v. Elder, 195 N. Y. 493; Judiciary Law, art. 17).
The reference to population in article 5-B does not merely serve to' designate and identify the place affected; it defines the problem in terms of population. The legislative findings (Judiciary Law, § 177-a) were that the emergency in narcotics law enforcement existed because of “ the inability of the overburdened criminal justice system to cope with the enormous volume of narcotics cases ” — a situation intimately related to population size.
As Judge Pound reasoned in the concurring opinion in Adler v. Deegan (supra):
“ The Legislature may by general laws confer upon cities powers of local legislation and administration in matters of State concern when it deems expedient to do so (Art. XII, § 5), or it may act in its own way in such matters. To exact that laws peculiarly adapted to conditions existing in the city of New York must apply in terms and effect to all cities, is to deny to the Legislature all powers of reasonable classification based on population in matters within its field of operation.
“ The conclusion follows that the life, health and safety of the inhabitants of the ¡city of Hew York are not, under the Home Bule Amendment,■ ¡a city concern which can be localized and delimited by the city boundaries, but are the concern of the whole State.” (Adler v. Deegan, supra, at p. 483, emphasis added).
I conclude, therefore, that article 5-B of the Judiciary Law is not a local law. The class, based upon population, is reasonable because of the problems peculiar to the City of New York engendered by the growing dangers flowing from the skyrocketing use of narcotics and its burgeoning addict population. A statute serving the needs of a small community is often insufficient to meet the needs of a larger community. The narcotics law enforcement problem has been well documented.
The court congestion created by the huge numbers of narcotic related prosecutions is compounded in New York City, the only city in the State of New York which is composed of more than one county. The legislation in question could, therefore, apply only to this city. There is no other city in the State of New York in which the consolidation of narcotic prosecutions would require the utilization of manpower spread across county lines. The necessary pragmatic action taken by the Legislature to help solve this pernicious urban problem can in no way *174 be condemned as the enactment of a local law (Adler v. Deegan, 251 N. Y. 467, supra; see, also, statutes relating to county and city classification, based on population cited in Farrington v. Pinckney, supra, pp. 85, 86).
The second constitutional question raised is whether the Grand Jury of the Special Narcotics Courts, which in practice is a New York County Grand Jury, is properly empowered to indict for narcotics offenses in any county and, subordinately, whether a New York County petit jury may properly hear the case.
The procedure currently in use is authorized by section 177-d which provides:
“ Notwithstanding any other provision of law * * * (iii) upon the application of the assistant district attorney in charge of the special narcotics parts appointed pursuant to the plan authorized by section one hundred séventy-seven-c, one or more grand juries may be drawn and impaneled for a special narcotics part upon the order of the justice assigned to such part, which grand jury may exercise all the powers of a grand jury in the county in which it is impaneled and may in addition exercise its powers with respect to the alleged commission of an offense in any county wholly contained in a city having a population of one million or more involving the sale or possession of a narcotic drug and any other offense that could be properly joined therewith in an indictment.”
At common law, every offense had to be inquired into and tried in the county where it was committed (Matter of Murtagh v. Leibowitz, 303 N. Y. 311; People v. Hetenyi, 277 App. Div. 310, affd. 301 N. Y. 757). However as with all common-law rules, this one may be changed by constitutional amendment or by legislative enactment (Matter of Wood v. Hughes, 11 A D 2d 893, affd. 9 N Y 2d 144; Mack v. People, 82 N. Y. 235; People v. Petrea, 92 N. Y. 128). Thus section 134 of the Code of Criminal Procedure was enacted to permit the presentment and trial of a crime committed in more than one county, in any county where a part of the crime was committed. Section 20.40 of the Criminal Procedure Law, the successor statute of 134 of the Code of Criminal Procedure, permits trial outside a county where the crime was committed under certain circumstances. For instance, it provides,
§ 20.40 * * * 4 * * * (c) An offense committed within five hundred yards of the boundary of a particular county, and in an adjoining county of this state, may be prosecuted in either such county.
*175 “ (d) An offense committed on the Hudson river southward of the northern boundary of New York City, or anywhere on New York bay between Staten Island and Long Island, may be prosecuted in any of the five counties of New York City.”
The purpose of section 134 of the Code of Criminal Procedure and its successor statutes was to extend the lines of jurisdiction beyond their common-law limits (People v. Quill, 2 Misc 2d 72; Matter of Quill v. County Ct., 3 A D 2d 717 [prohibition den.], mot. for lv. to app. den. 3 A D 2d 764). I find, therefore, that the mode of procedure for Grand Jury presentment set forth in subdivision (iii) of section 177-d was a proper exercise of the legislative power. I find nothing in section 6 of article I of the New York State Constitution or the Fifth Amendment to the Constitution of the United States which mandates that a crime must be presented to a Grand Jury in the county where the crime was committed or which prohibits the Legislature from passing a law which “ direct [s] that the offender be tried in another county than that in which the act was done ” (Mack v. People, 82 N. Y. 235, 237, supra).
The question then arises whether the enactment, in practice, violates some fundamental constitutional right. Does an indictment by a New York County Grand Jury and trial by a petit jury of that county deny the defendant the right to a trial by a jury of his peers? Not unless the defendant proves an intentional and systematic diserminatory practice in the selection of such jurors (People v. Chestnut, 26 N Y 2d 481; People v. Horton, 18 N Y 2d 355, cert. den. 387 U. S. 934).
Defendant has merely raised an argument without offering any proof of this issue. No constitutional deficiency can be présumed (Bailey v. Henslee, 287 F. 2d 936, cert. den. 368 U. S. 877). The mere fact that a case is tried outside the county where the crime was committed does not mean that the defendant is deprived of a trial by a jury of his peers. Indeed, venue is often changed for purposes of trial to insure a fair trial which might not otherwise be possible in the county in which the crime was committed. Further, it cannot seriously be contended that a defendant charged with the commission of a crime in New York City is not being tried by a jury of his peers when that jury is selected from among residents of a particular county within the City of New York.
Defense counsel’s assertion that section 177-a of the Judiciary Law precludes this court from hearing and determining cases commencing prior to September, 1972 is based upon an erroneous reading of the statute, which on its face evidences a *176 legislative target date for the implementation of the program and a specific legislative intent to include in that program the backlog of cases which was overburdening the existing system. As part of its findings and intent, the Legislature declared: ‘ ‘ The legislature contemplates that the program authorized herein shall consist of the establishment of special narcotics parts in the supreme court in cities having a population of one million or more to hear and determine narcotic cases from within counties wholly contained in a city having a population of one million or more, commencing not later than the September nineteen hundred seventy-two term and continuing thereafter during the duration of the emergency ” (§ 177-a).
Article 5-B in its present form was effective on May 24, 1972. September, 1972 represented the date by which the Legislature hoped the courts would be established, and was not a jurisdictional cutoff date as defense counsel claims.
A Grand Jury may always hear matters which occurred prior to the existence of the particular panel, provided that it otherwise has jurisdiction of the offense and the Statute of Limitations has not run. A newly created part of the Supreme Court, or a newly elected Justice of that court, may properly hear cases arising prior to its or his inception.
For the foregoing reasons that branch of defendant’s motion addressed to the dismissal of the indictment for lack of jurisdiction is denied.