Wachtler, J.
The defendant was indicted in Kings County for allegedly selling heroin there. Pursuant to article 5-B of the Judiciary Law the case was transferred to the New York City Centralized Narcotics Part located in New York County. As a result the defendant was tried, and convicted, by a jury *652 drawn entirely from New York County (see Judiciary Law, § 596, subd 1). He claims that this procedure violated his Sixth Amendment right to be tried by "an impartial jury of the State and district” where the crime was committed because it systematically excluded all residents of Kings County, the county where the crime was committed.
The argument, as developed in the defendant’s brief, proceeds along two lines, involving two arguably related aspects of the Sixth Amendment guarantee: (1) the right to be tried by a jury of the "district” where the crime was committed, which he claims means the county (but see People v Goldswer, 39 NY2d 656, decided herewith) or, at the outer limit, the judicial district defined in the State Constitution (art VI, § 4); (2) the right to be tried by a cross section of the community (see, e.g., Taylor v Louisiana, 419 US 522) which, he urges, must include or at least not "systematically exclude” residents of the county where the crime was committed. In essence then, he challenges the constitutionality of article 5-B as applied to this case.
Article 5-B of the Judiciary Law embodies "an emergency narcotics program” initiated by the Legislature in 1971 (see Judiciary Law, § 177-a). In that year the Legislature found that "an emergency of grave dimensions exists in narcotics law enforcement in the City of New York” (Judiciary Law, § 177-a; L 1971, ch 462), later found to include all "cities having a population of one million or more” (L 1972, ch 633, § 2). It was also found that "this crisis, which transcends the traditional jurisdictional boundaries of the counties wholly contained within such cities * * * demands coordinated prosecution, centralized direction and * * * massive new resources” (Judiciary Law, § 177-a).
The heart of the program involves the establishment of special, centralized narcotics parts to "hear and determine narcotics indictments assigned thereto from any part of the supreme court in any county within such cities” (Judiciary Law, § 177-b, subd 1; § 177-a). The Supreme Court within these areas "may” transfer such indictments to a special narcotics part (Judiciary Law, § 177-b, subd 2), the number and location of which must be determined by the Administrative Board of the Judicial Conference (Judiciary Law, § 177-b, subd 1). The law expressly provides that "The trial of an indictment in a special narcotics part shall for all purposes be deemed to be a *653 trial in the county in which the indictment was filed” (Judiciary Law, § 177-b, subd 3).
It is evident, and all parties agree, that the effect of this legislation is to combine the five counties of New York City into a single unit for the purpose of prosecuting narcotics indictments. The defendant also concedes that "the legislature can expand or diminish the size of a judicial district and the term 'district’ as used in the Sixth Amendment was not defined in terms easily transferrable to State jurisdiction” but urges that "judicial usage, state practice and the State Constitution require that 'district’ be read as meaning 'County’ or at the very least, that New York and Kings County are not within the same judicial district.”
For the reasons stated in People v Goldswer (supra), we reject the defendant’s contention that "in this State the terms 'district’ and 'county’ are co-terminous”, with the suggestion that the Legislature lacks the power to provide that a trial may be held in a county other than the county where the crime was committed.
The second part of this argument is more elusive. The point seems to be that when the Legislature combines two or more counties into a single unit for the purpose of determining the place of trial, they create a "judicial district”. This erroneous argument maintains that since the State Constitution defines judicial districts, and in fact places Kings County and New York County in different judicial districts (art VI, § 6), the Legislature cannot combine these two counties in a single district as they have done in article 5-B of the Judiciary Law.
The problem with this line of reasoning is that article 5-B does not create a judicial district. The statute simply fixes the place of trial in certain criminal cases. Although the constitutional establishment of multicounty judicial districts is essential to the administration and continuity of the judicial system throughout the State (cf. Taylor v Sise, 33 NY2d 357) it has no bearing, express or implied, on determining the place of trial or the place from which jurors should be drawn in criminal cases. This is not, and never has been, one of the functions of a judicial district in this State.
We recognize, of course, that in Federal prosecutions the "word district as used in the Sixth Amendment no doubt referred to the judicial districts established” by Congress in the Federal Judiciary Act (Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich *654 L Rev 59, 66; see, also, Williams v Florida, 399 US 78, 96), but the fact remains that the Legislature of this State—and most States generally (see, e.g., Blume, op. cit.; Change of Venue by State in Criminal Case, Ann., 46 ALR3d 295)—has designated the place of trial without reference to the judicial district created by section 6 of article VI. From the earliest times the defendant’s rights in this regard have been governed by a completely different section of the Constitution (art I, § 2) which as noted in People v Goldswer (supra) carries forward the common-law right to be tried by a jury from the county where the crime was committed unless the Legislature provides otherwise. In sum, section 6 of article VI imposes no limitations on this legislative power.
Finally the defendant argues that if New York City is one unit or district the selection of jurors should be made from the entire unit or at least the selection process should not systematically exclude the residents of the county where the crime was committed. Article 5-B of the Judiciary Law does not say how jurors should be selected for the special narcotics parts. However under the general provisions of the statute, jurors must be selected from the county where the trial is held (Judiciary Law, § 596, subd 1). Thus in this case all the jurors were drawn from New York County.
The prosecutor cites two Supreme Court cases involving Federal prosecutions in which it was held that the "Sixth Amendment does not require that the accused be tried by jurors drawn from the entire district” (Lewis v United States, 279 US 63, 72; Ruthenberg v United States, 245 US 480, 482). In Ruthenberg the defendant complained that the jurors were drawn from only one division of the district. There it was held that the argument "disregards the plain text of the Sixth Amendment, the contemporary construction placed upon it by the Judiciary Act of 1789 (c. 20, 1 Stat. 73, 88, § 29), expressly authorizing the drawing of a jury from a part of the district, and the continuous legislative and judicial practice from the beginning” (Ruthenberg, supra, p 482). In the Lewis case, a reorganization of the Federal judicial districts in Oklahoma caused the exclusion from the jury rolls of all residents of Tulsa County, the county where the crime was committed. And although the newly formed district had the power to "draw and summon jurors from the entire district, including the ten transferred counties”, the court held that "It was not necessary, however, that this be done” (Lewis, supra, p 72).
*655 The defendant argues that these decisions may no longer be valid in view of more recent decisions from the Supreme Court holding that "the selection of a petit jury from a representative cross section of the community is an essential element of the Sixth Amendment right to a jury trial” (Taylor v Lousiiana, 419 US 522, 528, supra). What these cases condemn is the systematic exclusion from the jury selection process of "distinctive groups in the community” (Taylor, supra, p 538), particularly when it results in discrimination or exclusion based on race, ethnic background or sex (see, e.g., Hernandez v Texas, 347 US 475; Hoyt v Florida, 368 US 57; Peters v Kiff, 407 US 493; Taylor v Louisiana, supra).
The defendant urges that the concept applies to geographical groups as well, at least to the extent that the jury selection process should not exclude the residents of the locality where the crime was committed. There is little authority on this point, and the decisions go both ways (compare People v Jones, 9 Cal 3d 546; Alvarado v State, 486 P2d 891 [Alaska], with United States v Cates, 485 F2d 26; People v Abraham, 44 AD2d 721; People v Cornick, 75 Misc 2d 169) or are inconclusive (State of Maryland v Brown, 295 F Supp 63; People v Scher, 76 Misc 2d 71).
But even in the cases cited by the defendant, something more was involved than the mere exclusion of the residents of a certain geographic area. Thus in the Jones case the court noted that there was a significant disparity between the racial composition of the area where the crime was committed and that of the area where the trial was to be held. And in the Alvardo case, where the jurors were selected only from an area within 15 miles of the court, located in a city, there was a complete exclusion of the rural community.
Here it could not be said that the transfer of the defendant’s case from Kings County, and the subsequent trial in New York County, by a jury drawn solely from that county, had this type of side effect. Although New York City is not a homogenous group, certainly there is no significant disparity in the racial, ethnic or sexual composition of Kings County, as opposed to New York County, and indeed the defendant does not contend that there is. In fact the defendant does not claim that the residents of Kings County are in any way distinguishable from the residents of New York County except for the fact that they happen to reside in a different part of the city, where the crime was allegedly committed. In our view that, in *656 itself, is not sufficient to establish them as a "distinct group in the community” so that their exclusion from the jury rolls would violate the defendant’s Sixth Amendment rights.
In short, the defendant was tried in New York City for a crime committed in New York City. Although the jury was drawn only from New York County, there was no systematic exclusion of any distinctive group, and the defendant was not entitled to have the jury drawn from the entire city.
Chief Judge Bbeitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed.