OPINION OF THE COURT
Shirley R. Levittan, J.
The principal legal issue raised on this motion to suppress evidence obtained pursuant to an eavesdropping warrant is whether Justice George Roberts, an Acting Supreme Court Justice sitting in a Centralized Special Narcotics Part of the Supreme Court located in one judicial district, has the authority to issue an eavesdropping warrant which is to be executed in another judicial district. An ancillary issue raised on this motion is whether the New York County District Attorney had the authority to apply for an eavesdropping warrant that was to be executed in a different judicial district. The court holds that Justice *833 George Roberts was empowered to issue the warrant and that such authority was necessary for the “coordinated prosecution” of narcotics offenses in the Special Narcotics Parts of the Supreme Court which were specifically established in response to the finding by our Legislature that an “emergency of grave dimensions exists in narcotics law enforcement” in New York City (Judiciary Law, § 177-a). The court also holds that the New York County District Attorney had the authority to apply for the eavesdropping warrant that is challenged in this case. For the reasons set forth below, defendants’ motion to suppress evidence obtained pursuant to the eavesdropping warrant is in all respects denied.
Defendant Pedro Luis Rodriguez y Paz (Paz) is variously charged under Indictment Nos. SN3153/80 and SN3158/80 with the crimes of conspiracy in the second degree, criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the second, third and seventh degrees, as well as other offenses involving the criminal use of drug paraphernalia and a hypodermic instrument. Both indictments also allege three counts of criminal possession of a weapon in the fourth degree. Arturo Martinez and Daniel Gonzalez, as well as other individuals, are charged under Indictment No. SN3155/80 with the crime of conspiracy in the second degree. Defendants Martinez and Gonzalez have adopted the instant motion by defendant Paz to suppress eavesdropping evidence upon which the respective conspiracy charges are founded.
On May 12, 1980 an eavesdropping warrant was issued by Justice George Roberts in New York County, upon the application of New York County District Attorney Robert M. Morgenthau. The warrant authorized the interception of telephonic communications of defendant Paz and one Victor Perez over a telephone listed to Estanislao Diaz, and located inside apartment 26W at North Shore Towers, Building One, 271-26 Grand Central Parkway in Queens County.
The defendants argue that Justice George Roberts did not have the authority to issue the eavesdropping warrant. The essence of this argument is that the New York wire *834 tapping statute (CPL art 700) which is reflective of controlling Federal law (US Code, tit 18, §2510 et seq.), defines the term “justice” to mean “any justice of the supreme court of the judicial district in which the eavesdropping warrant is to be executed” (CPL 700.05, subd 4). Counsel states that because Justice George Roberts was sitting in a Special Narcotics Part of the Supreme Court in the First Judicial District when he issued a warrant that was to be executed in Queens County in the Eleventh Judicial District, the warrant was jurisdictionally defective because it was issued by a Justice who was not “of the judicial district in which the *** warrant [was] to be executed” in contravention of CPL 700.05 (subd 4). Since the warrant was “jurisdictionally defective,” it is defendants’ position that any evidence derived pursuant to it must be suppressed. Further to support their position defendants argue that article 5-B of the Judiciary Law (§ 177-a et seq.) which establishes the Centralized Special Narcotics Parts of the Supreme Court does not expressly grant a Justice assigned to those parts the power to issue an eavesdropping warrant that is to be executed outside of the judicial district in which he is sitting.
The People vigorously refute the defendants’ argument that Justice Roberts lacked the authority to sign an eavesdropping warrant that was to be executed in the Eleventh Judicial District. The People argue that article 5-B of the Judiciary Law does not itself provide for the substantive grant of jurisdiction to the Judges sitting in the Centralized Special Narcotics Parts. Instead, the jurisdiction of these Judges emanates from the State Constitution, which authorizes the temporary assignment of a Supreme Court Justice to a Supreme Court in any judicial district (NY Const, art VI, §26, subd a). The essence of the People’s argument is that since the special narcotics courts are endowed with five-county, city-wide jurisdiction, the Justices temporarily assigned to these parts pursuant to the procedures set forth in article VI of the State Constitution acquire the powers and jurisdiction of a Judge sitting in each of New York City’s three judicial districts. Because a Judge sitting in a Special Narcotics Part in one county is constitutionally empowered to hear narcotics cases ema *835 nating from any of the city’s five counties, the People argue that Justice George Roberts was authorized to sign the eavesdropping warrant as a Justice “of the judicial district in which the * * * warrant [was] executed” within the meaning of CPL 700.05 (subd 4).
The “crisis” in narcotics law enforcement in New York City was described by our Legislature as an “emergency of grave dimensions” which transcends traditional jurisdictional boundaries and demands co-ordinated prosecution through an emergency narcotics court program (Judiciary Law, § 177-a). In response to the problem, Special Centralized Narcotics Parts of the Supreme Court were established under article 5-B of the Judiciary Law to hear and determine narcotics indictments assigned to them from any part of the Supreme Court in any county within cities having a population of one million or more (Judiciary Law, §§ 177-a, 177-b, subd 1). The effect of this legislation is to combine the five counties of New York City into a single unit for the purpose of prosecuting narcotics indictments (People v Taylor, 39 NY2d 649).
In light of the legislative findings concerning the “crisis” in narcotics law enforcement and the resultant creation of the centralized special narcotics courts with city-wide jurisdiction, this court cannot accept defendants’ invitation to rule that Justice Roberts lacked the power to issue an eavesdropping warrant authorizing the interception of telephonic communications outside the judicial district in which he was sitting.
The defendants’ position appears to be predicated upon a narrow interpretation of CPL 700.05 (subd 4). It also reflects an unduly restrictive view of article 5-B of the Judiciary Law which consolidated the five counties within New York City into a single unit for the purpose of prosecuting narcotics indictments in the centralized special narcotics courts.
The court is of the opinion that the phrase “of the judicial department in which the eavesdropping warrant is to be executed” as it is used in CPL 700.05 (subd 4), should be liberally construed so that the Centralized Special Narcotics Parts can most effectively hear and determine *836 narcotic indictments assigned to them from each of New York City’s five counties (Judiciary Law, § 177-b). Article VI (§ 26, subds a, i) of the State Constitution specifically permits the temporary assignment of a Justice of the Supreme Court to the Supreme Coúrt in “any judicial district” by the Chief Administrator of the courts in accordance with the standards and administrative policies established pursuant to section 28 of article VI of the Constitution. Because the effect of article 5-B of the Judiciary Law is to “combine the five counties of New York City into a single unit for the purpose of prosecuting narcotics indictments” (People v Taylor, supra, p 653) a Supreme Court Justice who is temporarily assigned to a Centralized Narcotics Part pursuant to article VI (§ 26, subd a) of the New York Constitution is in the view of the court, sitting in, and is deemed “of the judicial district in which the eavesdropping warrant is to be executed” for purposes of CPL 700.05 (subd 4). While temporarily assigned to Part 30, a Special Narcotics Part with multidistrict jurisdiction, Justice George Roberts, as a Justice of the Supreme Court, had all of the “powers, duties and jurisdiction” of such a Justice presiding over narcotics cases in Queens County (NY Const, art VI, § 26, subd k; see, also, Moritt v Nadjari, 51 AD2d 754, 756), and as such, was empowered to issue an eavesdropping warrant in any of the judicial districts within the five counties of New York City.
Defendants argue that all of the provisions of CPL article 700 must be strictly construed, which means that only a Supreme Court Justice sitting in the Eleventh Judicial District “[where] the eavesdropping warrant is to be executed” (CPL 700.05, subd 4) would be empowered to issue a warrant that was to be executed in Queens County. Because Justice George Roberts was sitting in the First Judicial District, defendants contend that strict compliance with CPL 700.05 (subd 4) precluded him from issuing the eavesdropping warrant in the case at bar. Defendants cite United States v Giordano (416 US 505) and United States v Chavez (416 US 562), in support of their position. In those cases, evidence was secured by wiretap interceptions pursuant to a court order issued upon an application which was not authorized by “[t]he Attorney General, or *837 any Assistant Attorney General specially designated by the Attorney General” pursuant to title 18 (§2516, subd [1]) of the United States Code. The Supreme Court held that the wiretap evidence was to be suppressed because the Government’s failure to comply sufficiently with the statutory procedures permitting only specifically designated Justice Department officials to authorize applications for wiretap orders. (US Code, tit 18, § 2516, subd 1.) This court does not find the reasoning in Giordano and Chavez (supra) to be particularly persuasive in the case at bar. In Giordano, the court noted (at p 528) that the statutory provision specifying which high ranking Justice Department officials were authorized to apply for wiretap orders “was intended to play a central role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored.” Adopting this language to support their argument urging strict construction of the New York wiretapping statute, defendants state that “it is clear that § 700.05 (4) specifying those justices who are authorized to issue eavesdropping warrants ‘was intended to play a central role in the [New York] statutory scheme’ ”. The court believes that this approach overlooks the finding of the State Legislature concerning the existence of an “emergency” in narcotics law enforcement in New York City and the need for an emergency narcotics court program to combat this “crisis” which “transcends *** traditional jurisdictional boundaries” (Judiciary Law, § 177-a). GPL 700.05 (subd 4) should be construed liberally so that the words “of the judicial district” will have a meaning which is consistent with the statutory scheme under article 5-B of the Judiciary Law which created the Centralized Special Narcotics Parts that are empowered to hear narcotics cases emanating from each of the city’s five counties (see People v Taylor, 39 NY2d 653, supra).
By liberally construing the definition of “judicial district” as it is used in GPL 700.05 (subd 4) so that it will be consistent with the policy underlying the creation of the Centralized Special Narcotics Parts, the court is not necessarily following an uncharted course. In People v Marino (49 NY2d 774), a section of the wiretapping statute *838 was construed liberally by the Court of Appeals in not requiring strict compliance by the District Attorney with a court directive that interim progress reports be filed pursuant to CPL 700.50 (subd 1) during the pendency of a wiretap. In interpreting the section liberally, the court stated (p 775) “(CPL 700.50, subd 1) does not itself require the filing of interim reports; rather it authorizes the issuing court to require such reports, apparently to facilitate judicial supervision of the wiretap.”
The court at bar is inclined to follow the Marino (supra) approach and is of the opinion that a liberal interpretation of the term “judicial district” under CPL 700.05 (subd 4) is consistent with the legislative intent underlying the creation of the specialized narcotics courts which were necessary to implement the “coordinated prosecution” of narcotics offenses. (Judiciary Law, § 177-a.) Because those courts were created in response to a crisis in narcotics law enforcement which “transcends * * * traditional jurisdictional boundaries” (Judiciary Law, § 177-a) of the counties within New York City, this court concludes that a Justice temporarily assigned to the special narcotics courts pursuant to the State Constitution would be concomitantly assigned to each of the city’s judicial districts. Accordingly, the court rules that at the time he signed the eavesdropping warrant while sitting in Part 30 in the First Judicial District, Justice George Roberts was a Justice “of the judicial district in which the * * * warrant [was] to be executed” within the meaning of CPL 700.05 (subd 4), and was authorized to issue an eavesdropping warrant that was to be executed in the Eleventh Judicial District.
Defendants’ remaining contention is that the eavesdropping warrant was invalid because it was issued upon the application of the New York County District Attorney who, in that capacity, lacked authority to apply for a warrant that was to be executed in another judicial district. Defendants argue that the Special Narcotics Prosecutor should have instead turned to the Queens County District Attorney, whose jurisdiction encompasses the judicial district in which the warrant was executed, and should have asked him to apply for the warrant before a Judge at that district. The court rejects this argument.
*839 CPL 700.10 (subd 1) provides: “Under circumstances prescribed in this article, a justice may issue an eavesdropping warrant upon ex parte application of an applicant who is authorized by law to investigate, prosecute or participate in the prosecution of the particular designated offense which is the subject of the application.” A District Attorney is an “applicant” as that term is defined in CPL 700.05 (subd 5). Wiretapping was appropriate in this case because the charges in the indictment include conspiracy to commit the crimes of criminal possession and criminal sale of a controlled substance in the first degree, which are “[designated offense[s]” under CPL 700.05 (subd 8, par [c]). The New York County District Attorney was an authorized applicant because the conduct alleged in the eavesdropping warrant application demonstrated a “sufficient nexus” to New York County to authorize the District Attorney of that county to make the application for a wiretap order on a telephone located in Queens County (People v Di Pasquale, 47 NY2d 764, 765). In Di Pasquale, the court held that the Bronx County District Attorney had the statutory authority to seek the issuance of a wiretap order for a telephone located in New York County. The cited case involved an investigation by the Bronx County District Attorney of the crimes of bribery, rewarding official misconduct and conspiracy. The investigation revealed that a number of telephone calls had been made to correction officers at various penal facilities, from a bar in Bronx County. A co-operating correction officer who had received one of the calls, later spoke on the telephone with one Prunty who had been seen frequently in the bar from which the calls had been made. The court held that these contacts with Bronx County demonstrated a sufficient nexus to permit the Bronx District Attorney to investigate the scheme, and authorized him to seek issuance of a wiretap order for a telephone at Prunty’s home located in New York County.
At bar, the court also finds that the New York County District Attorney had the authority to apply for the eavesdropping warrant because the indictments, which include charges of conspiracy stemming from activities that allegedly occurred in Bronx, Queens and New York Counties, *840 as well as elsewhere, could have been prosecuted in New York County (CPL 20.40; Penal Law, § 105.25, subd 1; People v Fusco, 75 Misc 2d 981). Moreover, wiretapping was appropriate upon the application of the New York County District Attorney because this narcotics indictment was prosecutable in a Centralized Special Narcotics Part of the Supreme Court where “[t]he trial * * * shall for all purposes be deemed to be a trial in the county in which the indictment was filed” (Judiciary Law, § 177-b, subd 3; People v Taylor, 39 NY2d 653, supra).
It is the opinion of this court that the New York County District Attorney was authorized to apply for an eavesdropping warrant before Justice George Roberts who was sitting in that county. For the reasons set forth above, Justice Roberts was empowered to issue an eavesdropping warrant that was to be executed on a telephone located in another judicial district.
Accordingly, defendants’ motion to suppress evidence obtained pursuant to the eavesdropping warrant is in all respects denied.