*448 OPINION OF THE COURT
Angela M. Mazzarelli, J.
These cases present a jurisdictional question of first impression. At issue is whether article 5-B of the Judiciary Law,[2] which established Special Narcotics Parts of the Supreme Court, or any other provision of law, confers jurisdiction on this court over felony complaints alleging overt criminal conduct wholly occurring in another county. For the reasons set forth below, the court concludes that it has jurisdiction and denies the defendants’ motions in their entirety.

Procedural History

In May of this year, members of the Brooklyn Tactical Narcotics Teams arrested the defendants for street level narcotics sales to undercover police officers. In each case, both the arrest and the overt conduct constituting the crimes charged (Penal Law § 220.39 [1]; § 220.16 [1]) occurred entirely within Kings County. “Pursuant to an agreement between the District Attorney of Kings County * * * and the Special Narcotics Prosecutor for the City of New York”, these criminal actions were commenced by the filing of felony complaints in New York County Criminal Court. The People did not obtain transfer orders from the Supreme Court pursuant to Judiciary Law § 177-b (2).
All three defendants were arraigned in New York County, and their cases adjourned to Part N, New York County, for action by the special narcotics Grand Jury and/or possible disposition by way of waiver of indictment and the filing of a superior court information. When each defendant initially appeared in Part N the People had no Grand Jury action to report. Counsel orally moved before this court for dismissal of the felony complaints on the ground that the court lacked geographical jurisdiction as defined in CPL 20.40. With the concurrence of all the parties, the court reserved decision and set a schedule for the filing of written motions and memoranda of law.[3]

*449
Mootness

While the court was awaiting the People’s response, the prosecutor, unbeknownst to the court, presented both the Selby and Moncrieffe matters to a special narcotics Grand Jury. A true bill was voted with respect to each, and indictments filed. These indictments are currently pending in other Special Narcotics Supreme Court Parts. Moncrieffe has actually entered a guilty plea to a lesser included offense. On September 12, 1990 the People moved to dismiss the charges against Page because the laboratory report showed that the items sold contained no controlled substance. This motion was granted by the court.
Although this court’s decision on the defense motions to dismiss the felony complaints appears moot, the parties have not so argued. Even if they had, a decision on the merits is warranted because the issue presented here satisfies all three of the criteria for an exception to the doctrine of mootness set forth in Matter of Hearst Corp. v Clyne (50 NY2d 707 [1980]).
First, there is a likelihood of repetition. Indeed the People concede that there is an "agreement” between the Special Narcotics Prosecutor and the Kings County District Attorney to regularly have some of those defendants arrested in Brooklyn for narcotics-related offenses "booked” in Manhattan Central Booking, and arraigned on felony complaints in New York County Criminal Court. Second, the problem is one which would typically evade review because felony complaints by definition are ephemeral. A felony complaint "serves to commence a criminal action but not as a basis for prosecution thereof’ (CPL 1.20 [8]), and therefore is not the accusatory instrument normally reviewed by the appellate courts. Finally, this issue is significant and presents important questions not previously passed on. (See also, Roe v Wade, 410 US 113 [1973]; People ex rel. Barna v Malcolm, 85 AD2d 313 [1st Dept 1982]; People ex rel. Arshack [Ellis] v Koehler, 151 AD2d 309 [1st Dept 1989].)

Part N, New York County: A Hybrid Supreme Court/Criminal Court Part

For the purpose of analysis, it is important to understand the organization of this court part. In New York County, Part *450 N is a "hybrid” Supreme Court and Criminal Court Part having a separate calendar, clerk, and crew of court officers for each court. However, only one Judge presides. She or he is a Justice or acting Justice of the Supreme Court who hears cases on the New York County Criminal Court Calendar as a "superior court judge sitting as a local criminal court”, as that phrase is used in CPL 10.30 (3). Supreme Court, Part N, New York County, has been designated one of the Special Narcotics Supreme Court Parts established pursuant to article 5-B of the Judiciary Law.
Contrary to the People’s allegations, all felony complaints charging a Penal Law article 220 offense which are filed and arraigned in New York County Criminal Court are not sent to Part N. Rather, only those cases which are being prosecuted by the office of the Special Narcotics Prosecutor appear on the Part N Criminal Court Calendar. Prosecutions brought by the New York County District Attorney’s office proceed through other parts.
In Part N, the felony complaints are typically disposed of in one of the following ways:
(1) The defendant may waive indictment and consent to prosecution by superior court information. This occurs in Supreme Court, Part N, "the appropriate superior court”, pursuant to CPL 195.10 (2) (b). At this point the Criminal Court felony complaint is dismissed, having been superseded by the superior court information.
(2) The Special Prosecutor may file a certificate, pursuant to CPL 180.80, indicating that the special narcotics Grand Jury has voted a true bill. The case is then adjourned for arraignment upon an indictment in one of the other designated Special Narcotics Supreme Court Parts (generally, AA Parts 30, 50, 70).
(3) The charges may be reduced to a nonfelony offense, "by replacing the felony complaint with, or converting it to, another local criminal court accusatory instrument” pursuant to CPL 180.50 (3). If there is no final disposition of the reduced charges, the case is adjourned to an all-purpose part of the New York County Criminal Court, and the prosecution transferred from the Special Narcotics Prosecutor’s office to the New York County District Attorney’s office. In such cases, a separate and distinct question then arises as to whether the New York County District Attorney has the authority to prosecute nonfelony offenses wholly occurring in another county. Article 5-B of the Judiciary Law, on its face, only *451 concerns felony offenses prosecuted by the Special Narcotics Prosecutor. Resolution of the instant motions, however, does not require the court to reach this issue.
(4) The felony complaint and all pending charges may be dismissed.
(5) If (1) through (4) above do not occur, the case is adjourned for Grand Jury action and remains pending on the Part N Criminal Court Calendar.
To the extent that Part N is a local criminal court part, it is, as the People assert, just another all-purpose part of the Criminal Court of the City of New York. As a criminal court part, Part N has no special designation or power pursuant to article 5-B of the Judiciary Law, but instead derives its jurisdiction from the New York City Criminal Court Act.

Analysis

At common law, "[t]here [was] no proposition better established than that the venue in a criminal case must be laid in the county where the offense was committed” (People v Mather, 4 Wend 229, 259 [1830]). Indeed, as (then) Chief Judge Cooke explained: "At common law, the power of the sovereign to enact laws proscribing conduct and attaching criminal liability to the commission of the prohibited acts extended only within the confines of its territory. The theory underlying the common-law rule stems from the concept that the accused had a right to be tried by a jury drawn from the neighborhood where the acts giving rise to criminal liability took place” (People v Fea, 47 NY2d 70, 75 [1979]). Early commentators recognized that "there is much to be said in favor of an interpretation that will preserve to a citizen the right to a trial in the county of his abode, of his friendships, of his means of defense.” (2 Hawk PC, ch 25, as cited in Mack v People, 82 NY 235, 237 [1880]; see also, 4 Blackstone’s Commentaries, at 305 [11th ed 1791].) The stringent application of this rule at common law led to the untenable situation where a crime could not be prosecuted because no county was found to have jurisdiction. (See, People v Fea, supra, at 75; People v Moore, 46 NY2d 1, 7 [1978].) Thus, by necessity, as early as the reign of Edward VI exceptions to the general rule developed, and Grand Juries, in certain instances, were empowered to inquire of acts committed outside the county in which they were sworn. However, this occurred only by act of Parliament. (2 Hale PC 163, as cited in Mack v People, supra, at 238.)
*452 The common-law rule, that the territorial unit for criminal prosecutions is the county of the overt criminal conduct, is also the general rule under the New York State Constitution. (See, e.g., People v Fea, supra; People v Moore, supra; People v Goldswer, 39 NY2d 656, 659-661 [1976]; Matter of Murtagh v Leibowitz, 303 NY 311, 316 [1951]; People v Petrea, 92 NY 128, 143 [1883]; Mack v People, supra, at 237-238.) The courts in this State, like those in England, have long recognized the right of the Legislature to statutorily provide for exceptions to this general rule. (See, e.g., Mack v People, supra, at 236; People v Hetenyi, 277 App Div 310, 314 [4th Dept 1950], affd 301 NY 757 [1950], and authorities collected therein.) The current Criminal Procedure Law, like its predecessor, the Code of Criminal Procedure, sets out several exceptions to the traditional concept of geographical jurisdiction. (See, CPL 20.10-20.60; Code Grim Pro §§ 134-138.)
CPL 20.40 is the statute which specifically concerns the geographical jurisdiction of counties over offenses. As the Practice Commentary points out, CPL 20.40 has been "given * * * a restrictive interpretation and operation.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 20.40, at 89.) However, the People do not argue, and the court has not considered, whether any of the CPL 20.40 exceptions apply to the cases at bar. Any reliance on CPL 20.40 here, would, as (now Judge) Bellacosa’s Practice Commentary suggests, be misplaced. He wrote, "[f]or a legislative variation on this subject [CPL 20.40] see Judiciary Law § 177-d, in which the familiar clause 'notwithstanding any other provision of law’ is used to avoid this section’s proscriptions with respect to the authorization of special city wide narcotics court parts in New York City” (ibid.; emphasis added).
Given the unique organization of Part N explained above, the court in determining the parameters of its geographical jurisdiction must consider to what extent Judiciary Law article 5-B and the New York City Criminal Court Act constitute a statutory exception to the traditional rule. The court must first decide whether Judiciary Law article 5-B, in establishing Special Narcotics Parts of Supreme Court, also conferred jurisdiction on New York County Supreme Court, Part N over felony complaints charging out-of-county conduct. If not, the court must then consider whether a superior court Judge sitting as a local criminal court Judge has jurisdiction over such complaints pursuant to the New York City Criminal *453 Court Act. Stated differently, what is the extent of New York County Criminal Court Part AP-N’s geographical jurisdiction?

Judiciary Law Article 5-B

Over 19 years ago article 5-B of the Judiciary Law was enacted in response to Governor Rockefeller’s request "for the establishment of special parts of the Supreme Court in the City of New York for the prosecution of felony narcotic cases on a city-wide basis” (Governor’s mem, 1971 McKinney’s Session Laws of NY, at 2614). It was the Governor’s expectation that "[t]he efficient and skillful prosecution of felony narcotics cases [would] help to remove more narcotic peddlers from our streets, deter professional drug traffickers and stem the flow of drugs into our communities” (ibid.). The Legislature declared that "an emergency of grave dimensions existed] in narcotics law enforcement” which "transcends the traditional jurisdictional boundaries of the counties wholly contained” in New York City (Judiciary Law § 177-a). Judiciary Law § 177-b (1) establishes Supreme Court Narcotics Parts to "hear and determine narcotics indictments assigned thereto from any part of the supreme court in any county within * * * cities having a population of one million or more” (emphasis added). The statute creating these special parts also provided for the appointment of a Special Narcotics Prosecutor pursuant to a "plan designed to effect the purposes of this article” adopted by the District Attorneys of the counties of such cities (Judiciary Law § 177-c) and for the impaneling of Grand Juries (Judiciary Law § 177-d).
The Court of Appeals has held that the "effect of this legislation is to combine the five counties of New York City into a single unit for the purpose of prosecuting narcotics indictments” (People v Taylor, 39 NY2d 649, 653 [1976]). Moreover, the court held that this legislation did not violate any constitutional right the defendant may have "to be tried by a jury from the county where the crime was committed” (supra, at 654) because "[fjrom the earliest times the defendant’s rights in this regard * * * carriefd] forward the common-law right * * * unless the Legislature provide[d] otherwise” (supra, at 654; emphasis added). Relying on the legislative findings set out in Judiciary Law § 177-a, the Court of Appeals has held that "the Legislature also intended that the five counties of New York City be combined into a single unit for purposes of centralizing the investigation” of narcotics *454 offenses (People v Rodriguez y Paz, 58 NY2d 327, 333 [1983]; emphasis added [New York County Supreme Court Justice, sitting in a Special Narcotics Part, authorized to issue eavesdropping warrants for Queens County and search warrants for Queens and Bronx Counties]).
Article 5-B of the Judiciary Law only refers to "narcotics indictments”, which it defines as "an indictment charging a crime that is prosecutable in any county wholly contained in a city * * * having a population of one million or more involving the sale or possession of a narcotic drug and any other offense properly joined therewith” (Judiciary Law § 177-b [1]; emphasis added). The statute recognizes that it constitutes an aberration from the traditional concept of geographical jurisdiction when it states that "[notwithstanding any other provision of law, upon or after arraignment on a narcotics indictment filed in the supreme court in any county within such cities and before entry of a plea of guilty or commencement of trial, such supreme court may order that the indictment and action be assigned to a special narcotics part of the supreme court” (Judiciary Law § 177-b [2]; emphasis added). Article 5-B of the Judiciary Law clearly envisaged the transfer of cases among counties occurring postfiling of an indictment. Thus, for example, in Taylor, the defendant was indicted in Kings County, and his case transferred to New York County for trial (People v Taylor, supra, at 651). The use by the Legislature of the permissive "may order” provides a mechanism for some judicial discretion to control the number, nature, and timing of cases transferred. If the procedure set forth in the statute is followed, there is no constitutional defect in the trial of out-of-county crimes. (See, People v Cornick, 75 Misc 2d 169 [Sup Ct, NY County 1973].) Here, the agreement between the Kings County District Attorney and the Special Narcotics Prosecutor is the basis for the transfer of large numbers of unindicted cases without order of the court and without consideration of the current availability of judicial resources.
Furthermore, the People do not allege that the "agreement” between the Kings County District Attorney and the Special Narcotics Prosecutor is consistent with, or pursuant to, the "plan” which is supposed to be adopted by the District Attorneys of all the counties of New York City pursuant to Judiciary Law § 177-c. The court is unaware of any such "plan” being on file, nor has same been made available to the court. Thus, the court is unable to ascertain to what extent this "agreement” violates or is in furtherance of, the "plan”. *455 Indeed, the court is not even sanguine that the "plan” referred to in the Judiciary Law exists.
On its face, article 5-B of the Judiciary Law simply does not provide a statutory basis for the filing of felony complaints in New York County alleging narcotics offenses in Kings County. Nor does it add to or detract from the jurisdiction of New York County Criminal Court, Part N. Indeed, the People concede the statute is silent with respect to accusatory instruments other than narcotics indictments. Simply put, article 5-B of the Judiciary Law is not dispositive of defendant’s motions.
The People argue, and the_ court agrees, that the Legislature’s declaration that the drug "crisis * * * transcends the traditional jurisdictional boundaries of the counties” (Judiciary Law § 177-a) in New York City should inform its interpretation of other relevant statutes. Such an approach was taken by the Court of Appeals in People v Rodriguez y Paz (58 NY2d 327, supra) in upholding an eavesdropping warrant issued by a New York County Justice for Queens County. Judge Jasen wrote: "Thus, although not specifically addressing the use of eavesdropping warrants as an investigatory tool, it seems clear that the Legislature has manifested a general intent that statutes regulating the investigatory phase of narcotics law enforcement, including CPL 700.05 (subd 4), be liberally construed to effectuate the purposes underlying article 5-B of the Judiciary Law.” (People v Rodriguez y Paz, supra, at 335.) It is in this context then that the court considers whether any other provision of law confers on it geographical jurisdiction over the felony complaints at bar.

New York State Constitution and the New York City Criminal Court Act

The judiciary article of the New York State Constitution was adopted November 7, 1961, effective September 1, 1962, to provide for a unified court system and to direct that "[t]he legislature * * * establish in and for the city of New York * * * a single, city-wide court of criminal jurisdiction” (NY Const, art VI, § 1 [a]; see also, § 15 [a]). The Constitution also provides that the court "shall have jurisdiction over crimes and other violations of law, other than those prosecuted by indictment * * * and over such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as *456 may be provided by law” (NY Const, art VI, § 15 [c]; emphasis added).
To effectuate these constitutional mandates, the Legislature enacted the New York City Criminal Court Act by Laws of 1962 (ch 697). New York City Criminal Court Act § 20 provides that the Criminal Court of the City of New York is a "single, city-wide court * * * with such power and jurisdiction as are herein or elsewhere provided by law.” Pursuant to New York City Criminal Court Act § 30 "each of the judges of the court”, when sitting as a Magistrate, has "jurisdiction throughout the city, and may perform any and all of the duties * * * of a magistrate in and for any one of the counties in the city.” That the creation of the New York City Criminal Court departed from the traditional concept of geographical jurisdiction is also supported by the contemporaneous commentaries of counsel to the Joint Legislative Committee on Court Reorganization, Arthur H. Goldberg. (See, Goldberg, Practice and Procedure Changes Under the Court Reorganization Acts, 1962 McKinney’s Session Laws of NY, at 3687, 3691.)
The thrust of the People’s argument is that these provisions of the New York City Criminal Court Act, in light of the Legislature’s findings in article 5-B of the Judiciary Law, should be liberally construed. CPL 100.55 (2) provides that "[a]ny local criminal court accusatory instrument may be filed with the New York City criminal court when an offense charged therein was allegedly committed in New York City.” A felony complaint constitutes such an accusatory instrument. (See, CPL 1.20 [2], [8].) When the CPL and New York City Criminal Court Act provisions are broadly read together, the People argue, and the court agrees, that the law allows a felony complaint to be filed in New York County Criminal Court charging criminal conduct occurring elsewhere in New York City.
In support of this position, the People also rely on two Criminal Court cases: People v Esteves (95 Misc 2d 70 [Crim Ct, NY County 1978]) and People v Hexner (104 Misc 2d 671 [Crim Ct, NY County 1980]). While both these cases broadly construe New York City Criminal Court Act §§20 and 30, they are not dispositive because they do not address the issue of felony complaints. They concern relatively minor nonfelony offenses which are prosecuted in summons appearance parts. Indeed, the Hexner court expressed reservations as to the constitutionality of trying an "out-of-county” case where a *457 jury trial is involved. (People v Hexner, supra, at 672-675.) But, if there is specific legislation conferring "trial jurisdiction”, it is constitutionally sound to provide for a jury trial of an "out-of-county” case. (See, People v Taylor, 39 NY2d 649, supra; People v Cornick, 75 Misc 2d 169, supra.)
Moreover, Esteves and Hexner (supra) are not on point because they concern the New York City Criminal Court’s "trial jurisdiction”. The issue at bar is not whether the court, as a local criminal court, has trial jurisdiction over these out-of-county felony offenses, but whether it has preliminary jurisdiction. (See, CPL 1.20 [25].) Because Part N is presided over by a "superior court judge sitting as a local criminal court” it has "preliminary jurisdiction” as provided in CPL 10.30 (2). (See, CPL 10.30 [3]; 10.20 [2].) Proceedings on a felony complaint constitute proceedings within the definition of "preliminary jurisdiction” in CPL 1.20 (25). Preliminary appearances on a felony complaint may be had in a county other than that which is the locus of the criminal conduct alleged. (Cf., People ex rel. Williams v Warden, 54 Misc 2d 907 [Sup Ct, Queens County 1967] [arraignment in Kangs County on Queens County arrest and crime upheld where case immediately transferred back to Queens County]; see also, NY City Grim Ct Act §§ 20, 30, 31.)
In short, although not expressly stating so, the Constitution of this State and the New York City Criminal Court Act, by creating one citywide court of criminal jurisdiction, allow for felony complaints to be filed in any county of the city alleging overt criminal conduct wholly occurring in a different county of the city. Such a broad interpretation is also consistent with the legislative intent manifested in Judiciary Law article 5-B. Thus, the court has jurisdiction over the felony complaints at bar, and each defendant’s motion to dismiss the felony complaint against him is denied.
Finally, there is no impediment to a waiver of Grand Jury action and prosecution by superior court information on these out-of-county cases in Part N, Supreme Court. CPL 200.15 specifically provides that a superior court information "has the same force and effect as an indictment and all procedures and provisions of law applicable to indictments are also applicable to superior court informations, except where otherwise expressly provided” (emphasis added). Therefore, article 5-B of the Judiciary Law applies to superior court informations, as well as indictments. Thus, Supreme Court, Part N, New York County, as a designated Special Narcotics Supreme Court *458 Part, is an "appropriate superior court” (CPL 195.10 [2] [b]) for accepting pleas by way of superior court information, even in cases where all the conduct occurred wholly outside of the county.

. Judiciary Law §§ 177-a — 177-e. This article was enacted by Laws of 1971 (ch 462 [eff June 17, 1971]). A few technical changes were made by Laws of 1972 (ch 633 [eff May 24,1972]) and Laws of 1985 (ch 134 [eff Apr. 1, 1985]). Since then, there have been no further amendments.

. All papers were filed and served late. The court received the defense papers as follows: Selby — July 1, 1990; Moncrieffe — June 18, 1990; Page— June 29, 1990. The People’s response to the Selby and Moncrieffe motions *449 was filed August 10, 1990. The People defaulted with respect to Page. Accordingly, Page’s factual allegations must be deemed conceded (People v Gruden, 42 NY2d 214 [1977]).