*330 opinion of the court
Jasen, J.
The principal issue raised on this appeal is whether an Acting Supreme Court Justice designated to sit in a Special Narcotics Part of Supreme Court located in one judicial district of the City of New York has the authority to issue an eavesdropping warrant which is to be executed in another judicial district in that city. We hold that he does.
In December of 1979, New York City police officials received information indicating that a large narcotics distribution ring was operating throughout New York City. The leader of this ring was reported to be one of the defendants herein, Pedro Luis Rodriguez y Paz. This information triggered an intensive investigation aimed at arresting and prosecuting Rodriguez y Paz and his agents, accomplices and suppliers. During the course of the investigation, a substantial amount of evidence was gathered which corroborated the information received earlier and established probable cause to believe that Rodriguez y Paz and his accomplices were using an apartment in Queens, New York, and the telephone listed to Estanislao Diaz located therein to conduct their drug distributing operations. Based on this information, the New York County District Attorney applied to Acting Supreme Court Justice George Roberts, then sitting by designation in a Special Narcotics Part of Supreme Court, New York County, for an order authorizing electronic surveillance and recording of drug-related conversations over that telephone between Rodriguez y Paz and his coconspirators. On May 12, 1980, Justice Roberts issued an eavesdropping warrant authorizing the recording of those conversations. The evidence gathered pursuant to the eavesdropping warrant revealed that Rodriguez y Paz was indeed the kingpin in a large-scale drug enterprise operating throughout the City of New York.
Following the expiration of the eavesdropping warrant on June 11, 1980, Justice Roberts issued six search warrants, based primarily on evidence obtained pursuant to the eavesdropping warrant, authorizing the search of Rod *331 riguez y Paz’ apartment in Queens and those of his accomplices in Queens, Bronx and New York Counties.
On June 22, 1980, defendants Gonzalez and Martinez were indicted for conspiracy in the second degree for their participation in the illegal narcotics enterprise. On June 26, 1980, Rodriguez y Paz was charged, in two separate indictments, with a variety of drug-related and weapons offenses.
Following his arrest and arraignment on the indictments, Rodriguez y Paz moved to controvert the eavesdropping warrant and suppress evidence derived therefrom. Shortly thereafter, both Gonzalez and Martinez joined in that motion. The defendants did not contest the sufficiency of the facts to establish probable cause to issue the warrant; nor did they object to the way the electronic surveillance was conducted. Instead, they contended that the warrant was jurisdictionally invalid because Justice Roberts, sitting in a Special Narcotics Part of Supreme Court in the First Judicial District, issued an eavesdropping warrant to be executed in the Eleventh Judicial District, in violation of CPL 700.05 (subd 4) which permits an eavesdropping warrant to be issued by “any justice of the supreme court of the judicial district in which the eavesdropping warrant is to be executed”.
In a well-reasoned opinion, Justice Shirley Levitt an denied defendants’ motions, holding that Justice Roberts was authorized to issue the warrant and that “such authority was necessary for the ‘coordinated prosecution’ of narcotics offenses in the Special Narcotics Parts of the Supreme Court which were specifically established in response to the finding by our Legislature that an ‘emergency of grave dimensions exists in narcotics law enforcement’ in New York City.” (109 Misc 2d 832, 833.) Thereupon, all three defendants pleaded guilty. Rodriguez y Paz was convicted of attempted conspiracy in the second degree and criminal possession of a controlled substance in the second degree. He was sentenced to 2-4 years in prison on the possession count and 3½ to 7 years on the attempted conspiracy count. Martinez and Gonzalez were both convicted of conspiracy in the fourth degree and each received a sentence of one year in prison. On appeal, the Appellate *332 Division affirmed, without opinion. (People v Martinez, 88 AD2d 834; People v Gonzalez, 88 AD2d 835; People v Rodriguez y Paz, 87 AD2d 1008.)
On this appeal, defendants maintain that Justice Roberts lacked authority to issue an eavesdropping warrant which was to be executed outside the “judicial district” in which he was sitting and that the evidence seized pursuant thereto should be suppressed. Additionally, defendants argue, for the first time, that Justice Roberts could not lawfully be assigned to sit as a Justice of the Special Narcotics Court.
Defendants’ contention that the eavesdropping warrant was jurisdictionally defective is based upon a strict interpretation of CPL 700.05 (subd 4). CPL 700.10 (subd 1) provides that a “justice” may issue an eavesdropping warrant[1] while CPL 700.05 (subd 4) defines “justice” to mean, inter alia, “any justice of the supreme court of the judicial district in which the eavesdropping warrant is to be executed”.[2] Thus, defendants contend that Justice Roberts was not authorized to issue the subject warrant because he was sitting in a Special Narcotics Court in New York County (the First Judicial District as defined in section 6 of article VI of the New York Constitution), while the warrant was to be executed in Queens County (the Eleventh Judicial District).
While it is true, as defendants assert, that eavesdropping statutes are usually given a strict construction (see People v Washington, 46 NY2d 116, 121-122; People v Sher, 38 NY2d 600, 604), we do not believe that such rigidity is required in this case. We reach this conclusion after careful review of the over-all legislative scheme set forth in article 5-B of the Judiciary Law which was designed to curb the distribution of illegal narcotics in New York City.
*333 In 1971, the New York Legislature enacted article 5-B of the Judiciary Law for the purpose of curbing the illegal activities of large city narcotics distributors. The Legislature recognized that “an emergency of grave dimensions exists in narcotics law enforcement in the city of New York” (Judiciary Law, § 177-a, L 1971, ch 462). The inability of law enforcement agencies to stem the distribution of illegal narcotics was termed a “crisis, which transcends the traditional jurisdictional boundaries of the counties wholly contained within such cities.” (Judiciary Law, § 177-a, as amd by L 1972, ch 633, § 2 [emphasis supplied].) In an effort to alleviate this crisis, the Legislature specifically authorized “coordinated prosecution, centralized direction and the infusion of massive new resources.” (Judiciary Law, § 177-a.)
Implicit in this mandate is a recognition that the illegal narcotics trade in New York City is no longer a regional problem confined to individually delineated judicial districts, but, rather, one that extends into all parts of the city. In order to effectively deal with this city-wide problem, the Legislature removed the “traditional jurisdictional boundaries” and combined all five counties of New York City into a single unit for purposes of prosecuting narcotics indictments. (People v Taylor, 39 NY2d 649.) In our view, the Legislature also intended that the five counties of New York City be combined into a single unit for purposes of centralizing the investigation and prosecution of the individuals operating these enterprises throughout New York City. (Cf. Judiciary Law, § 177-d, subd [iii].)
In light of the Legislature’s findings that a crisis exists in New York City narcotics law enforcement and its intent that the problem be attacked through “coordinated prosecution” and “centralized direction”, we cannot agree with defendants’ position that issuance of a warrant to be executed in another district was not authorized. We hold, therefore, that a “judicial district”, as that term is used in CPL 700.05 (subd 4) and insofar as the investigation of drug-related offenses is concerned, is intended to be liberally construed to include all five counties of New York City so that the Special Narcotics Courts can more effectively *334 carry out the Legislature’s plan to stem the flow of illegal narcotics throughout the city.
The direction we take today is not new. In People v Taylor (39 NY2d 649, supra), after reviewing the Legislature’s purpose in enacting article 5-B of the Judiciary Law, we declined to strictly construe the term “district” as it is used in the Sixth Amendment to the United States Constitution. In that case, a defendant was arrested for selling heroin in Kings County (Second Judicial District as defined in section 6 of article VI of the New York Constitution) but was tried in a Special Narcotics Court sitting in New York County by a jury drawn from New York County. This was argued to be a violation of his Sixth Amendment right to be tried by “an impartial jury of the State and district wherein the crime shall have been committed”. In rejecting this argument, we recognized that section 6 of article VI of the New York Constitution was not meant to be determinative of the place of trial or the place from which jurors should be drawn.
Similarly, we do not believe that section 6 of article VI has any bearing on determining the extent of a Special Narcotics Court Judge’s authority to issue drug-related eavesdropping warrants. Nor is there any authority indicating that the Legislature, in light of its enactment of article 5-B of the Judiciary Law, intends for us to construe the term “judicial district”, as it is used in CPL 700.05 (subd 4), in accordance with the delineation of districts contained in section 6 of article VI. While that may very well have been the Legislature’s intent when CPL 700.05 (subd 4) was first enacted, it should be clear that the subsequent enactment of article 5-B of the Judiciary Law manifests a different intent — i.e., that Special Narcotics Court Judges have city-wide jurisdiction in authorizing the interception of conversations related to the illegal sale and distribution of narcotics throughout New York City. Such intent is implicit in the Legislature’s pronouncement that the crisis in narcotics law enforcement in New York City “transcends the traditional jurisdictional boundaries of the counties wholly contained within” that city and the Legislature’s command that in order to properly address this *335 crisis there must be “coordinated prosecution” and “centralized direction”. (Judiciary Law, § 177-a.)
A view of the over-all legislative scheme as set forth in article 5-B of the Judiciary Law indicates that the need for “centralized direction” was intended to apply to the investigative as well as prosecutive and postconviction stages of New York City narcotics law enforcement. Particularly noteworthy is subdivision (iii) of section 177-d, which authorizes the Assistant District Attorney in charge of the Special Narcotics Courts to impanel a Grand Jury to investigate alleged commissions of drug-related offenses “in any county wholly contained in a city having a population of one million or more”. Thus, although not specifically addressing the use of eavesdropping warrants as an investigatory tool, it seems clear that the Legislature has manifested a general intent that statutes regulating the investigatory phase of narcotics law enforcement, including CPL 700.05 (subd 4), be liberally construed to effectuate the purposes underlying article 5-B of the Judiciary Law. Accordingly, we hold that the “judicial district” in which eavesdropping warrants issued by Special Narcotics Court Judges must be executed encompasses the five counties of New York City.
Defendants argue, however, that the construction which we give CPL 700.05 (subd 4) today violates the purpose behind restricting who may issue eavesdropping warrants and where such warrants may be executed — i.e., to further more responsible judicial participation in the use of electronic surveillance. (See Senate Report No. 1097, US Code Cong & Admin News, 1968, 90th Cong, p 2179.) In our view, such responsible judicial participation is guaranteed by requiring the issuing Judge to be familiar with the conditions in the area where the warrant is to be issued and executed. It cannot be seriously disputed that Special Narcotics Court Judges are sufficiently familiar with conditions existing throughout New York City to satisfy this requirement. Indeed, the Legislature itself has made it abundantly clear that “crisis” conditions exist throughout New York City with respect to the enforcement of narcotics laws. Furthermore, the Judges sitting on the Special Narcotics Courts hear and determine only narcotics indict *336 ments from all of New York City’s five counties and are, therefore, particularly well qualified to decide when the issuance of a drug-related eavesdropping warrant to be executed in New York City is appropriate and when said issuance would constitute an impermissible invasion of an individual’s privacy rights. Thus, by implicitly authorizing Special Narcotics Court Judges to issue eavesdropping warrants to be executed in all five New York City counties, the Legislature has enhanced, rather than hindered, responsible judicial participation in the use of electronic surveillance.
Defendants, citing United States v Giordano (416 US 505) and United States v Chavez (416 US 562) insist that CPL 700.05 (subd 4) must be given a narrow construction. Both Giordano and part of Chavez involve motions to suppress evidence seized pursuant to an eavesdropping warrant issued upon an application which was not authorized by “[t]he Attorney General, or any Assistant Attorney General specifically designated by the Attorney General” as required by title III of the Omnibus Crime Control and Safe Streets Act of 1968 (US Code, tit 18, § 2516, subd [1]). The Supreme Court, in both cases, gave the Federal statute a narrow construction after finding that Congress clearly intended the statute to play a central role in limiting who was authorized to issue eavesdropping warrants.
In sharp contrast, our Legislature, in enacting article 5-B of the Judiciary Law, recognized that the drug problem in New York City is a city-wide problem knowing no traditional jurisdictional boundaries and, in our view, intended CPL 700.05 (subd 4) to be liberally construed to allow Justices sitting on New York City’s Special Narcotics Courts to have jurisdiction over all narcotics-related investigations and prosecutions throughout all five New York City counties and accordingly to have authority to issue eavesdropping warrants affecting any of those counties. Defendants’ reliance on Giordano and Chavez is, therefore, misplaced.
Defendants’ remaining contention, that Justice Roberts could not lawfully be assigned to sit on the Special Narcotics Court, although not raised at the suppression hearing, is a question of law which could not have been *337 obviated by an evidentiary showing at that hearing and, contrary to the People’s assertions, may be raised for the first time on appeal. (See Telaro v Telaro, 25 NY2d 433, 439; cf. People v Martin, 50 NY2d 1029, 1031.) Nevertheless, the argument is unpersuasive. Article VI (§ 26, subd g) of the New York State Constitution authorizes the temporary assignment of a Judge of a New York City court, such as Justice Roberts, to the Supreme Court “in the judicial department of his residence”. Since Justice Roberts, who resided in New York County, was assigned to sit in the Special Narcotics Part of Supreme Court located in New York County, defendants cannot be heard to say that his assignment violated subdivision g of section 26.
Defendants, nevertheless, insist that authorizing Justice Roberts to issue eavesdropping warrants which are to be executed outside the First Judicial District violates article VI (§ 26, subd g) because, as a result of such authority, he must be deemed to be sitting outside the judicial department of his residence. The short answer to this argument is that our Constitution specifically provides that once a Justice is properly assigned in accordance with subdivision g of section 26, as Justice Roberts was, he acquires all of “the powers, duties and jurisdiction of a judge or justice of the court to which assigned.” (Art VI, § 26, subd k.) Since Special Narcotics Court Judges have, as we interpret CPL 700.05 (subd 4) in light of article 5-B of the Judiciary Law, been given city-wide jurisdiction to authorize the interception of drug-related conversations, Justice Roberts’ assignment fully complied with both subdivisions g and k of section 26 of article VI of the New York Constitution.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg, Meyer and Simons concur.
In each case: Order affirmed.

. CPL 700.10 (subd 1) provides in full that: “Under circumstances prescribed in this article, a justice may issue an eavesdropping warrant upon ex parte application of an applicant who is authorized by law to investigate, prosecute or participate in the prosecution of the particular designated offense which is the subject of the application.”

. CPL 700.05 (subd 4) provides in full that: “ ‘Justice,’ except as otherwise provided herein, means any justice of an appellate division of the judicial department in which the eavesdropping warrant is to be executed, or any justice of the supreme court of the judicial district in which the eavesdropping warrant is to be executed, or any county court judge of the county in which the eavesdropping warrant is to be executed.”