■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDWARD ROSEN, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Giaccio, J.), dated May 24, 1984, which granted those branches of the defendant's omnibus motion which sought suppression of physical evidence and statements allegedly made to law enforcement officers.

Order reversed, on the law and the facts, and the aforementioned branches of the motion to suppress denied.

While alone on foot patrol at approximately 8:45 A.M., Police Officer George Field heard a voice coming from a nearby parking lot. Officer Field saw a man (the complainant) standing next to the driver's side of a parked automobile. The complainant appeared to be "very excited". The officer also saw a second man (the defendant) seated in the driver's seat of the automobile.

Without unholstering his weapon, Officer Field entered the parking lot. The automobile in question was facing the officer and he could see the defendant "bent down over the steering wheel". He was unable to see the defendant's hands. The defendant exited from the parked automobile and, with the complainant, walked in the direction of the approaching officer. The complainant informed the officer that "that man just pulled a gun on me". Without first making inquiry of the defendant, Officer Field "put [the defendant] against the car and * * * searched him", i.e., he "patted the exterior of [the defendant's] clothing"; the officer did not "go into" the defendant's pockets. Officer Field "frisked" the defendant because "I was in fear of immediate danger to me and [the complainant]".

As a consequence of the pat down, Officer Field discovered an empty holster strapped to the defendant's ankle. The defendant stated that he did not have the gun. Officer Field then asked the complainant, "did [the defendant] actually pull a gun on you, are you sure", to which the complainant replied, "Yes, he did. I think it may be in the car". The officer told the defendant "to remain where he was". Officer Field then entered the parked automobile from the driver's side and searched the area where the defendant was previously seated. The officer found a .38 caliber Colt revolver underneath the driver's seat. When asked by the officer, the defendant stated that he did not have a permit for the gun. Officer Field handcuffed the defendant and advised him of his constitutional rights. The defendant stated that he was willing to answer any questions without an attorney present.

No questioning occurred until some 30 minutes later when the defendant arrived at the 107th Precinct. Officer Field asked the defendant "where he got the gun"; the latter replied that "he got it from a previous tenant or something". The officer also recovered a "replica detective shield" from the defendant, which he said "he had gotten * * * from a friend of his that was retired from the police department".

On the basis of the foregoing, Criminal Term granted those branches of defendant's omnibus motion which sought suppression of physical evidence and statements. The People have appealed (*see,* CPL 450.20 [8]; 450.50).

We conclude that the police had probable cause both to arrest the defendant and search his parked automobile. Officer Field was approached by a citizen-informant (*People v Hicks,* 38 NY2d 90) who informed him that the defendant had "just pulled a gun" on him (*see, People v Dowling,* 44 NY2d 999; *People v Igneri,* 105 AD2d 755; *People v Cabral,* 91 AD2d 944, *appeal dismissed* 59 NY2d 704). The defendant was lawfully frisked (*see, People v Green,* 35 NY2d 193), and after discovering an empty holster strapped to the defendant's ankle (*see, People v Samuels,* 50 NY2d 1035, *cert denied* 449 US 984), and upon making further inquiry, Officer Field "had probable cause to believe that the gun was in [the defendant's] car, from which he had just exited, 'the next logical place' " (*People v Pacifico,* 95 AD2d 215, 220; *accord, People v Igneri, supra,* at p 756). Accordingly, the search of the automobile and seizure of the gun were not violative of the defendant's constitutional rights notwithstanding that the vehicle was parked (*see, People v Orlando,* 56 NY2d 441) and that the arrest followed the search (*see, People v Singleteary,* 35 NY2d 528).

We also conclude that, at a minimum, Officer Field could reasonably have believed that his safety, or the safety of the complainant, was in danger, thereby justifying his entry into the parked vehicle for the limited purpose of searching for a weapon in the location that it would most likely be found, i.e., underneath the driver's seat (*see, Michigan v Long,* 463 US 1032; *People v Pitt,* 110 AD2d 723).

Finally, that portion of Criminal Term's order suppressing the defendant's statements allegedly made to law enforcement officers should also be reversed inasmuch as it hinged upon the court's finding that the defendant's 4th Amendment rights had been violated. We note that the arresting officer's question about the permit was the type of threshold questioning approved by the Court of Appeals in *People v Huffman* (41 NY2d 29). The simple question "propounded to the defendant by the officer did not constitute a process of interrogation to which *Miranda* is applicable" (*People v Huffman, supra,* at p 34). Mollen, P. J., Bracken, Niehoff and Rubin, JJ., concur.