THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
KENNETH MCGRIFF, Appellant.

First Department, August 13, 1987

## APPEARANCES OF COUNSEL

*Susan C. Wolfe* of counsel *(John L. Pollok* with her on the brief; *Hoffman Pollok & Gasthalter,* attorneys), for appellant.

*Maryjane C. Shimsky* of counsel *(Donna Krone* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

At issue on this appeal is the validity of the telephone search warrant which authorized a search of the premises where defendant resided and, also, of another residential dwelling some distance away. Our focus is directed both to the underlying sufficiency of the warrant itself and to the question of whether collateral estoppel effect should be accorded to the holding made in the separate case involving the other dwelling that such warrant was, in fact, infirm.

The relevant facts are as follows: On the evening of September 10, 1985, New York City Police Sergeant Clyde Foster applied by telephone to a Queens County Criminal Court Judge for a search warrant for two premises in Queens, 155-47 116th Avenue, and the second floor of a two-family dwelling at 116-66 231st Street. Sergeant Foster informed the Judge that at 6:15 P.M. an unidentified and unregistered informant, who had provided information in the past, told him that two black males had been abducted, beaten and were near death, at the

116th Avenue location, as the result of a drug transaction. Foster also indicated that the informant had told him that he had just left the location 20 minutes earlier and that he had been in the company of three of the suspects who were going to the 231st Street location, at about 8:00 P.M., in order to cut and distribute drugs.

Because the victims were said to be in danger, the Judge authorized a "no-knock" search of both premises, at any time of the day or night, and authorized the arrest of all persons found therein, as well as the seizure of drug paraphernalia, money, guns and any other contraband found.

The search of the 116th Avenue location later that night resulted in the arrest of seven people and the recovery of misdemeanor quantities of narcotics and several rifles. The search of the 231st Street location, which is defendant Mc-Griff's home, resulted in the arrest of defendant and five others, and the recovery of approximately eight pounds of narcotics, eight loaded handguns, over $35,000 in cash, and drug paraphernalia.

Five of the persons arrested at the 116th Avenue location were charged with misdemeanors pursuant to a complaint filed in Queens County Criminal Court. Upon the defendants' motion to controvert the search warrant, a hearing was held to determine whether probable cause existed to issue the warrant.

Sergeant Foster was the sole witness at this hearing. He testified that he never met or spoke directly with the informant but dealt with him only through a third person. In distinction to his conclusory statement in the telephone application with respect to the informant's reliability, at the hearing Sergeant Foster stated that he had used this informant on only one prior occasion, a few months earlier, when he had given "slight information" about a homicide which resulted in an arrest by other police officers, but that he, Foster, did not know whether a conviction followed. In addition, Sergeant Foster acknowledged that the information provided to him contained few details from which the basis of the informant's knowledge could be verified. He had been told that the 116th Avenue address was a one-family home, and that was what he reported to the Judge during the telephonic warrant application. In fact, the address was a three-family dwelling. He further acknowledged during his testimony at the hearing that the informant gave him no detailed information regard-

ing the layout of the house or where the contraband could be found. While the informant stated that guns, drugs, and money could be found, he gave no details or specifics about their type or amount or where they could be located. In an attempt to corroborate the tip, Foster had sent surveillance teams to the two addresses, a fact which he had not disclosed in the telephonic application. In any event, no significant information was garnered by these surveillance units. At 9:05 P.M. on the night in question, almost three hours after the urgent call regarding pistol-whipped kidnap victims near death, the police executed the searches authorized by the telephone warrant. No kidnap victims were found, and no arrests for kidnapping or assault were made at either location.

The Queens County Criminal Court (Alan Beldock, J.), granted the motion to controvert the warrant and suppressed all of the contraband seized. That court found that the information could not be corroborated, although officers were sent to the scene, and that the reliability of the informant was not established by past performance or personal knowledge. Accordingly, the court found that under either the *Aguilar-Spinelli* rule requiring reliability of the informant and corroboration of the basis of his knowledge, or under the "totality of the circumstances" test of *Illinois v Gates* (462 US 213), the undetailed hearsay information supplied by this informant was insufficient to establish probable cause for the issuance of a warrant.

Defendant Kenneth McGriff and the others arrested at the 231st Street location were indicted by a Special Narcotics Grand Jury on drug and weapon charges, and their cases were removed to the Supreme Court, New York County, for prosecution.

During the pretrial stage, defendant McGriff moved to controvert the warrant and to suppress the contraband seized thereby. The affidavit of defendant's attorney, on information and belief, set forth, as required by CPL 710.60 (1), the sources of the information in support of his belief. These included his conversations with "my client", conversations with prosecuting authorities, information contained in the indictment warrant application, and other similar documents in the court file. The moving papers, which also demonstrated defendant's standing by way of his sworn statement that the 231st Street address was his residence, were sufficient to warrant a hearing pursuant to CPL 710.60 (4). We find that summary denial of that motion by the court before whom the original application

was made (Rothwax, J.), was improper. The exquisite factual precision which the court deemed necessary to defeat summary denial is at variance with the provisions of CPL 710.60 (3), and establishment of that factual showing is the very purpose of the hearing which should have been granted at the outset.

When the case was assigned to an IAS Part, defendant moved for reargument of the motion and, in addition, submitted the minutes of the Queens hearing which had been concluded in the interim. The IAS court (McLaughlin, J.), finding that defendant had standing to move for suppression, granted the motion to the extent of directing a *Franks* hearing *(Franks v Delaware,* 438 US 154), limited to the issue of whether Sergeant Foster had perjured himself, and ordering an in camera *Darden* hearing *(People v Darden,* 34 NY2d 177) to examine the informant. The court declined to grant collateral estoppel effect to the Queens Criminal Court suppression ruling, finding that there was a lack of identity of parties both as to the prosecutors in each action and the parties defendant.

At the *Franks* hearing, Sergeant Foster testified once again as to the circumstances of the informant's "tip", this time in greater detail. Police Officers Myron Cherry and Larry Mikoleski also testified. The testimony indicated that the informant had actually telephoned Officer Cherry who passed the information on to a Sergeant McKeon who then notified Sergeant Foster. Foster admitted that he personally had had no significant prior contact with this informant.

Significantly, at the New York County *Franks* hearing, Foster revealed that at the time he was making the telephone application for a search warrant, he had already arranged to obtain physical custody of the informant at the station house, dispatching Officer Mikoleski for that purpose, although this fact was not revealed during the course of his telephone application. Instead he had indicated to the issuing Magistrate that if further information was needed he would send someone down to the station parking lot, where Mikoleski had custody of the informant in a van, to question the informant and relay the information back. Thus, when the Magistrate, over the phone, had asked Foster which apartment at the 231st Street address he wished to enter, Foster had replied that he was having someone "beeped on the beeper to get that information", implying that the informant had to be "beeped", or telephoned, at another unknown location and not that the informant was in custody. Moreover, the circumstance of the

informant's presence at the station house, finally admitted to by Sergeant Foster at the New York hearing, was also in direct contradiction to his statement at the Queens County Criminal Court hearing that the informant was fearful of coming to the station house, otherwise "we would have grabbed him and had him swear the warrant." Beyond demonstrating the serious inconsistencies in Sergeant Foster's various versions of the facts, these circumstances also point strongly to the infirmities inherent in the unverified telephone application for the warrant, which would not have been countenanced in a more formal application by way of sworn statements in affidavits, and further explain Foster's reluctance to submit such formal application despite the informant's availability. Moreover, Foster also admitted that he had provided the informant with transportation back to the 231st Street location where the informant expected to be arrested. This is in distinction to the impression given earlier of the informant's willingness to risk arrest and prosecution, indicating greater reliability, rather than the newly disclosed fact that the informant was under the aegis of the police, and protected, at the time of his subsequent arrest.

Police Officer Myron Cherry testified that he was the person who actually received the telephone call and the confidential tip and that he did not take any further action himself but merely passed on this information to Sergeant McKeon. Cherry stated that he had periodically received other information from this informant in the past, but that he had never used any of the prior tips himself in any of his own investigations and, accordingly, could not attest to the informant's actual past reliability.

At the conclusion of the hearing, the court, finding that Sergeant Foster did not commit perjury, denied defendant's motion to controvert the warrant. The court also concluded that the informant possessed the "indicia of reliability" and that there was, therefore, sufficient probable cause to uphold the search warrant.

■ We disagree and reverse. Based upon the facts here present the motion to controvert the search warrant should have been granted.

The subject warrant was issued on the basis of the hearsay statement of Sergeant Foster given to the Criminal Court Judge over the telephone. It is well settled that to establish probable cause to support a warrant based on such hearsay

information, the police must demonstrate (1) that the informant had some basis for the knowledge he transmitted and (2) that the informant was reliable *(see, People v Bigelow,* 66 NY2d 417, 420; the *"Aguilar-Spinelli"* rule: *Aguilar v Texas,* 378 US 108, 114; *Spinelli v United States,* 393 US 410).

There are several ways by which the basis of the informant's knowledge requirement may be met. In many cases it will be established if the informant carefully details and describes the underlying circumstances in which he obtained his information and the description of such circumstances clearly indicates that he speaks with personal knowledge of the event which he relates. *(People v Rodriguez,* 52 NY2d 483, 491; *People v Wirchansky,* 41 NY2d 130, 132.) Here, the informant's description was so general and indefinite that it fails to meet that test. The informant claimed to have left the scene of a kidnapping and assault arising from a ruined drug transaction at the 116th Avenue location. Yet, no names or descriptions of either the suspects or the victims were provided. The only provided detail regarding those premises, that it was a one-family dwelling, proved wrong. No layout of the premises was given, nor were any specific locations for the drugs, paraphernalia, money or guns given. Nor was any information as to the specific quantities and types of the contraband supplied. The information as to the 231st Street location, where defendant McGriff was found, was even more vague, lacking any specificity or detail other than the unsupported assertion that drugs would be cut there later that evening. The informant here provided no objective description of sufficient detail which would indicate that he spoke with personal knowledge of the crime.

Where the informant does not specifically set forth the facts upon which his story rests, as was here the case, the basis of the knowledge may be established by subsequent police verification of the tip corroborating the informant's story. *(People v Rodriguez, supra,* at 491-492; *People v Bigelow, supra,* at 423-424; *People v Elwell,* 50 NY2d 231, 237.) While Sergeant Foster did seek such verification by sending surveillance teams to the two addresses, neither team was able to observe any activity at either address which would corroborate the informant's story. No observations were made to suggest that criminal activity was afoot, and the dire reports of a kidnapping and assault, with the victims "near death", could never be confirmed by the police. Significantly, when the raid took place, no evidence was found of any such kidnapping. In sum,

there was a complete failure to establish the requisite informant's "basis for knowledge".

Nor was the informant's reliability sufficiently demonstrated. Reliability can be established by showing that the informant has a "track record" of having come forward with reliable information in the past. *(People v Johnson,* 66 NY2d 398; *People v Rodriguez, supra.)* Here, Sergeant Foster conclusorily informed the issuing Magistrate that the informant had been reliable. However, upon questioning at the various hearings, Foster admitted that he had never personally met the informant and that only once before had he provided "slight information", the outcome of which he had no knowledge. Officer Cherry also stated that he had received information in the past, but, again, he could not vouch for its usefulness or reliability. This can hardly be said to provide a basis for establishing that the informant was reliable.

An alternative means by which "reliability" may be verified is an admission by the informant against his own penal interest. The rationale for using such admission as a predicate of reliability is recognition of the fact that because the informant's identity is known to the police, they may use his statement admitting criminal conduct against him if his information is false, or stated somewhat differently, the informant would be placed in jeopardy if he attempts to deceive or mislead the police. *(People v Johnson, supra,* at 403-404; *People v Comforto,* 62 NY2d 725, 727.)* The People urge that the informant in this case should be deemed reliable under this standard. The difficulty with that position, however, is that the informant here did not implicate himself either in the serious crimes of kidnapping and assault which he so dramatically reported to the police, or in any other criminal activity. In that setting, the fact that the police were to chauffeur him from the station house back to 231st Street where he would be arrested, was meaningless. Since the informant had admitted no criminal conduct on his own part, nor given any sworn statements, he was in no "jeopardy" by virtue of this "staged arrest" and the propelling factor of reliability was absent.

Accordingly, under the two-pronged *Aguilar-Spinelli* test for probable cause, which remains controlling as a matter of this State's constitutional law *(People v Bigelow,* 66 NY2d 417, 425; *see also, People v Griminger,* 127 AD2d 74), the failure to establish either the informant's "basis of knowledge" or his "reliability" would be fatal to the warrant in question. Here, there has been a failure on both issues. Moreover, the same

result would obtain even if we were to apply the less stringent "totality of the circumstances" test propounded by the United States Supreme Court in *Illinois v Gates* (462 US 213, *supra*, *reh denied* 463 US 1237). Under any analysis, the "totality of the circumstances" of the information conclusorily provided by Sergeant Foster in applying for the warrant would not provide a "substantial basis", considering the vagueness of the unverified and uncorroborated tip, for concluding that probable cause existed.

Based upon the foregoing findings, the denial of the motion to controvert the search warrant and suppress the contraband obtained thereby must be reversed and the motion to suppress granted.

■ While we have found the warrant invalid, on the facts, we also believe that this determination could have been made by the court on the motion for reargument, without a hearing, by virtue of the doctrine of collateral estoppel.

Collateral estoppel arises from a long-recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him *(People v Goodman,* 69 NY2d 32, 37; *People v Lo Cicero,* 14 NY2d 374, 380). While the doctrine had its genesis in civil litigation, where society's primary concern is to provide a means of peaceful, swift and impartial resolution of private disputes, and has been liberally applied in that context as a litigation-limiting device that conserves the time and resources of the parties and the courts, it is now clear that collateral estoppel applies to criminal proceedings as well, although not in quite the same way because of the different interests involved. In the criminal law, in contrast to civil litigation, society has an overwhelming interest in insuring not merely that the determination of guilt or innocence be made in any particular case, but that it be made correctly, and it is this concern with reaching a correct result which has been held to be of preeminent importance. *(People v Plevy,* 52 NY2d 58; *People v Berkowitz,* 50 NY2d 333.)

Because of these concerns, and in recognition of the constitutional and statutory protections against double jeopardy enjoyed by criminal defendants, there has been a reluctance in criminal cases to extend the availability of the doctrine of collateral estoppel to any who were not actually parties in the prior litigation. Thus, it has been indicated that for collateral estoppel to be applied in a subsequent criminal case, there

must be an identity of parties and the party against whom the estoppel is sought to be used must have had a full and fair opportunity in the prior proceeding to litigate the precise issue involved. *(People v Sailor,* 65 NY2d 224; *People v Goodman, supra,* at 38.)

At the outset, it is clear that the issue decided in the Queens County Criminal Court is the very same issue which is here present—that is, the validity of the telephone search warrant issued on September 10, 1985. The question of the validity of that warrant, whether in the Queens case or the instant case, is dependent upon whether the hearsay information which served as a predicate for the warrant came from an informant who was reliable and who had some basis for the knowledge he transmitted. Both cases involve the same informant, the same warrant application, the same warrant, and the determination as to whether there was probable cause incidental thereto would in no way be affected by the particular defendant arrested or by which of the two specified locations was involved. Insofar as the Queens case is concerned, there is no question that the People there were afforded a full and fair opportunity to litigate all the relevant issues with respect to the warrant's validity.

The critical question before us is whether the requirement that there be an "identity of parties" precludes application of collateral estoppel in this case where the identity of those parties is wholly irrelevant upon the issue to which the estoppel is sought to be applied.

In resolving that question we turn first to the prosecuting agencies who both speak in the name of the People of the State of New York, albeit under the direction of different District Attorneys. Significantly, the rule which requires that the parties be identical is not ironclad and covers situations where the parties are so closely related that they may be deemed as one. *(People v Berkowitz, supra,* at 344-345.) The type of relationship contemplated is exemplified by the parties in *People ex rel. Dowdy v Smith* (48 NY2d 477, 482), where the Court of Appeals encountered no difficulty in concluding that the "People as prosecutors * * * stood in sufficient relationship with the Division of Parole in the parole proceeding to meet the requirements of the doctrine in this respect." In that light, the relationship between two similar prosecutors, one in Queens County and the other in New York County, must also be held to be sufficient for collateral estoppel purposes. That is particularly so here where the instant case was assigned to a

Special Narcotics Part (pursuant to Judiciary Law art 5-B) and was transferred from Queens to New York pursuant to the special narcotics legislation enacted to battle a "crisis * * * which transcends the traditional jurisdictional boundaries of the counties wholly contained within [New York City]" (Judiciary Law § 177-A) and which authorizes "coordinated prosecution" and "centralized direction" (§ 177-a). As a consequence, all five counties of New York City are combined into a single unit for prosecution of narcotics indictments *(see, People v Rodriguez y Paz,* 58 NY2d 327) and the boundaries for judicial districts are thereby blurred. Thus, in determining the places where jurors are to be drawn *(People v Taylor,* 39 NY2d 649) or where eavesdropping warrants may be authorized and executed *(People v Rodriguez y Paz, supra),* county boundaries have been disregarded in special narcotics prosecutions. While the relationship between the two prosecutors would, in and of itself, appear to be sufficient for collateral estoppel purposes, the fact that the cases are both special narcotics prosecutions within New York City gives that relationship an even greater unity of identity and emphasizes the appropriateness of according collateral estoppel effect to the Queens County Criminal Court judgment which the narcotics prosecutor had a full and fair opportunity to litigate.

With respect to the identities of the defendants, it is conceded that defendant McGriff was not a party in the Queens Criminal Court case. It is essential, however, to view the requirement for "identity of parties", insofar as it concerns defendants, within the context of the cases that emphasize its necessity. For the most part, these have involved situations where one defendant has sought to use the acquittal of a codefendant as a bar to his own prosecution. *(See, People v Berkowitz, supra, and discussion therein at 346.)* The inappropriateness of permitting such collateral estoppel use of a codefendant's acquittal bespeaks itself in light of the disparities of proof, or the legal availability of certain evidence or defenses or the like, unique to a particular defendant which may result in that defendant's acquittal without similarly inuring to the benefit of a codefendant. Nor does such acquittal mean that the People will necessarily be unable to prove the guilt of the other defendant beyond a reasonable doubt when given a full and fair opportunity to do so, an opportunity which is simply not available at the trial of another defendant *(People v Sailor, supra; People v Berkowitz, supra).* In such situations "who" the particular defendant is in the

case has an impact on the ultimate determination of guilt or innocence in that case, and restricting the consequences of that determination solely to the defendant involved is consistent with the predominate concern in criminal cases that the question of guilt or innocence be correctly resolved in every case.

Here, however, we are dealing with a wholly different matrix. We are concerned only with the factors relevant to the determination of lack of probable cause for a particular search warrant and not the ultimate question of any person's guilt or innocence. That different defendants were parties to the motions to suppress would in no way impact upon, or alter, the determination on the probable cause issue—that issue is dependent solely on the informant's reliability and the basis of his knowledge and resolution of those facts would in no way be affected by "who" the particular defendant is. *(See, People v Nieves,* 106 Misc 2d 395.)

Nor are we dealing here with the type of uncertainty inherent in seeking to determine the basis on which any particular issue leading to an ultimate verdict was reached. Instead, we are dealing with the narrowly circumscribed suppression issue of the sufficiency of the showing of probable cause to support the warrant. This "clean-cut" question is particularly suited for the application of collateral estoppel. *(People v Plevy,* 52 NY2d 58, 68, *supra* [Fuchsberg, J., concurring, and cases cited therein]; *see also, People v Scott,* 93 Misc 2d 1074, 1079-1080.) The findings of fact and conclusions of law which fully detail the basis upon which the Queens Criminal Court reached its decision on the motion leave no doubt that the relevant issues were decided without any reference to the parties defendant in that case. The determination as to the warrant's underlying validity was founded solely on the basis of the police testimony, just as a similar determination here would necessarily be founded, irrespective of the identity of any particular defendant arrested pursuant to that warrant. The People already having had an ample opportunity to fully litigate the question of the warrant's validity, fundamental fairness and equity dictate that they be estopped from relitigating that issue, which has already been decided against them.

Accordingly, the judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered June 19, 1986, which upon his plea of guilty, convicted defendant of criminal possession of a controlled substance and sentenced him to a

prison term of nine years to life, should be reversed, on the law and the facts, and the matter remanded to the appropriate IAS Part, Supreme Court, New York County, for further proceedings not inconsistent with this decision. *(See, People v Crandall,* 69 NY2d 459.)

Ross, J. (concurring). I concur with the majority that the defendant's motion to controvert the search warrant executed on premises 116-66 231st Street, Queens County, should be granted. However, my reason for granting that motion is solely based upon the fact that the information provided by the alleged informant was unreliable *(see, Aquilar v Texas,* 378 US 108 [1964]; *Spinelli v United States,* 393 US 410 [1969]; *Illinois v Gates,* 462 US 213 [1983], *reh denied* 463 US 1237 [1983]).

Furthermore, after reviewing the record in the instant case, I find it would be inappropriate to apply the doctrine of collateral estoppel to the determination of the instant criminal case. In *People v Berkowitz* (50 NY2d 333, 345 [1980]), the Court of Appeals held "Thus, the doctrines of collateral estoppel and *res judicata* are somewhat less needed in the criminal law", and I agree that this is such a case.

MURPHY, P. J., and ROSENBERGER, J., concur with ELLERIN, J.; Ross and ASCH, JJ., concur in an opinion by Ross, J.

Judgment, Supreme Court, New York County, rendered on June 19, 1986, unanimously reversed, on the law and the facts, and the matter remanded to the appropriate IAS Part, Supreme Court, New York County, for further proceedings not inconsistent with this court's decision. *(See, People v Crandall,* 69 NY2d 459.)