■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

Rocco Cassella, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Dufficy, J.), rendered April 28, 1987, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence and statements made by him to the police.

Ordered that the judgment is reversed, on the law, that branch of the defendant's motion which was to suppress physical evidence and the defendant's statements to the police is granted, the plea is vacated, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The findings of fact have been considered and are determined to have been established.

On March 19, 1986, the police and agents of the United States Secret Service executed a search warrant at the premises located at 157-68 9th Avenue, Beechhurst, Queens County, New York. The affidavits submitted in support of the application for this warrant contained allegations that an informant, who had previously been arrested in connection with a credit card scheme, had stated that the defendant was providing the informant with forged and altered credit cards and was receiving stolen property obtained with the credit cards. The informant further alleged that the defendant, whom he knew as "Rocky", received the stolen goods at his home at the corner of 160th Street and 9th Avenue. The informant provided the police with the defendant's telephone number and a description of his automobile. The police thereafter conducted an investigation which consisted of verifying that the defendant's address, telephone number and automobile registration were as the informant had stated. The police investigated the defendant's prior criminal history and found that in the prior year he had pleaded guilty to grand larceny in the third degree in connection with a credit card scheme perpetrated against a retail store in New York County. The police also conducted a one-day surveillance of the defendant's residence but did not observe any illegal activity. Based upon the aforementioned information the search warrant was issued by the Criminal Court, Queens County.

During the search of the defendant's home, no stolen goods or forged or altered credit cards were found but the police discovered a .45 caliber pistol and a .22 caliber rifle which the defendant admitted were unlicensed and unregistered. Follow-

ing the denial of the defendant's motion to controvert the warrant and suppress the evidence and the statements made by him at the time of his arrest, he pleaded guilty to attempted criminal possession of a weapon in the third degree in full satisfaction of the indictment. The defendant argues that the police lacked the requisite degree of probable cause to obtain a warrant to search his residence and therefore the evidence and statements obtained in connection therewith must be suppressed. We agree.

As a rule, the probable cause necessary to obtain a search warrant need not be sufficient to sustain a conviction beyond a reasonable doubt but may merely constitute information sufficient to support a reasonable belief that an offense is being committed or that evidence of a crime may be found in a certain place (see, People v McRay, 51 NY2d 594, 602). In situations in which a search warrant application is premised on hearsay information provided by an informant the prosecution must satisfy the two-pronged *Aguilar-Spinelli* test; namely, (1) that the informant was reliable, and (2) that the informant had an adequate basis of knowledge for the information which he transmitted to the police (see, *Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108; *People v Griminger*, 71 NY2d 635; *People v Johnson*, 66 NY2d 398; *People v Landy*, 59 NY2d 369).

Based on the facts of this case, we conclude that the prosecution failed to establish that the informant was reliable. The informant did not have a previous history as a supplier of accurate information to the police nor were the informant's statements regarding the defendant given under oath (see, *People v Johnson*, 66 NY2d 398, 403, *supra*). Moreover, although the informant's statements could arguably be considered as a declaration against his penal interest, we disagree with our dissenting colleague's position that this fact was sufficient to establish the informant's reliability. The Court of Appeals has recognized that while declarations against an informant's penal interest give reasonable assurances as to the reliability of the informant's statements, "[s]uch admissions are not guarantees of truthfulness and they should be accepted only after careful consideration of all the relevant circumstances of the case indicates that there exists a basis for finding reliability" (*People v Johnson, supra*, at 403-404).

At the time the informant herein provided the information to the police regarding the defendant, he was already under arrest and had made admissions as to his involvement in a credit card scheme. These circumstances make it apparent

that the informant, who was already subject to criminal liability, was seeking to gain favor with the police on his own behalf by implicating the defendant as a supplier of the fraudulent credit cards, and accordingly cast doubt on the informant's reliability *(see, People v Griminger,* 71 NY2d 635, *supra).*

Moreover, we conclude that the fact that the information provided by the informant regarding the defendant's residence, automobile and telephone number were corroborated by independent police investigation did not, in and of itself, constitute a basis for finding that the informant was reliable *(see, People v McGriff,* 130 AD2d 141). The independent police investigation consisted of merely verifying the ownership of the defendant's automobile and residence and determining that the defendant had pleaded guilty to a similar offense several months previously. The police investigation did not in any way verify the informant's allegations that the defendant was in possession of stolen property. This investigation was clearly insufficient to serve to verify the informant's allegations regarding the defendant *(cf., People v Durante,* 131 AD2d 499, *lv denied* 70 NY2d 711).

Finally, we find that the informant's statements did not reflect an adequate basis for his knowledge of the defendant's criminal activity. The informant merely provided general information regarding the defendant's residence, automobile and telephone. Notably, the description of the defendant's residence did not include any specific details such as the layout of the house or the location of stolen property allegedly stored therein *(see, People v McGriff,* 130 AD2d 141, *supra).*

In view of the foregoing, we conclude that the People failed to meet the *Aguilar-Spinelli* test and thus, the evidence and statements obtained as a result of the execution of the search warrant must be suppressed. Mollen, P. J., Thompson and Eiber, JJ., concur.

Lawrence, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: I find no support in this record for the defendant's claim that the warrant to search his home was improperly issued by the Criminal Court of the City of New York.

The following pertinent information was set forth in the search warrant application. The police were involved in an ongoing investigation concerning a series of larcenies by false pretenses, in the course of which the perpetrators obtained video and stereo equipment from a discount store. Specifically,

between February 12, 1986 and March 14, 1986, a man using the name "Jay Kaufman" had made 29 fraudulent purchases by the use of false or altered credit cards, at the discount store. The theft scheme also involved the use of false delivery addresses, the interception of merchandise at the delivery point, and the transfer of merchandise from the delivery van to the perpetrators' waiting vehicle.

On March 14, 1986, a man matching "Kaufman's" description ordered some stereo equipment at the store, this time using the name and Mastercharge card of "Joseph Corno". He was apprehended by a New York City detective and a Secret Service special agent after he had the merchandise transferred to his van at the delivery address.

At the precinct, after being advised of and waiving his *Miranda* rights *(see, Miranda v Arizona,* 384 US 436), the man (hereinafter the informant) admitted that he had previously used the name "Jay Kaufman", and that he had made the 29 earlier purchases. He further stated that he had obtained the bogus credit cards from a person known to him as "Rocky"; that he had delivered the stolen merchandise to "a red brick one family house with a large garage" on the corner of 160th Street and 9th Avenue in Queens, and that several deliveries were made personally to Rocky. In addition, the informant said that Rocky owned a grey Chevrolet and he gave the police the telephone number he used to contact Rocky. Finally, he described Rocky as a "white male approximately 60 years of age with a possible criminal record".

The police verified that, at the location given, there was a one-family red brick house with a two-car garage; a grey 1976 Chevrolet was registered to the defendant, Rocco Cassella, at the house address; and the telephone number provided by the informant was listed in the defendant's name at that address. Additionally, the police verified that on October 31, 1985, the defendant had pleaded guilty to grand larceny, involving a scheme to defraud another discount store, using forged or altered credit cards.

Approximately three days thereafter, the police sought and acquired a search warrant for the defendant's home to seek evidence of the larcenous scheme then in operation.

In applying the *Aguilar-Spinelli* test *(see, Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410), which requires that there be a factual basis for an informant's information, I find that the informant in this case "describe[d] the underlying circumstances in which he obtained his infor-

mation and his description of such circumstances clearly indicate[d] that he [spoke] with personal knowledge of the event[s] which he relate[d]", thereby satisfying the " 'basis of knowledge' requirement" *(People v Rodriguez,* 52 NY2d 483, 491).

Further, as to the second prong of the *Aguilar-Spinelli* test concerning the informant's reliability, I find that the informant's statements, which constituted admissions against his penal interest, were sufficient, in and of themselves, to establish his veracity *(see, People v Comforto,* 62 NY2d 725). This case is distinguishable from *People v McGriff* (130 AD2d 141, 148), in that the informant here clearly implicated himself in the larcenous credit card scheme. As noted by the Court of Appeals in *People v Johnson* (66 NY2d 398, 403-404): "[A]dmissions [against penal interest] are not guarantees of truthfulness and they should be accepted only after careful consideration of all the relevant circumstances of the case indicates that there exists a basis for finding reliability. Nevertheless, *admissions against penal interest have been held sufficient to support a finding of probable cause* even though the informant has little to lose and much to gain by supplying information to the police in which he incriminates himself *(see, People v Comforto, supra; People v Rodriguez,* 52 NY2d 483, 490, *supra),* or though his admissions incriminate him of criminal conduct less serious than the crime under investigation *(see, People v Comforto, supra; United States v Harris* [403 US 573]). They are accepted because the informant's identity is known to the police and they may use his statement admitting criminal conduct against him if his information is false *(see,* 1 LaFave, Search and Seizure §3.3 [c], at 525-534). The inculpating admissions thus serve the same purpose as a false statement under oath by placing the informant in jeopardy if he attempts to deceive or mislead the police" (emphasis supplied). Therefore, the criminal court which issued the search warrant herein, could properly rely upon the statements made by the informant, even if they were not sufficiently corroborated by independent police investigation *(see, People v Comforto, supra; United States v Harris,* 403 US 573, 583-585, *supra).*

Accordingly, the suppression court's finding that the criminal court had properly issued the search warrant should not be disturbed.

With respect to the defendant's alternate argument, I find no merit to his claim that his statements made to the police prior to his being advised of his *Miranda* rights *(see, Miranda v Arizona,* 384 US 436, *supra)* should have been suppressed.

The simple questions posed by the detective, when, during the search, he found ammunition and guns, were designed to clarify the nature of the situation and "did not constitute a process of interrogation to which *Miranda* is applicable" *(People v Huffman,* 41 NY2d 29, 34; *see, People v Reed,* 123 AD2d 333; *People v King,* 121 AD2d 471, *lv denied* 68 NY2d 758; *People v Rosen,* 112 AD2d 253).