*989 OPINION OF THE COURT
Donald J. Mark, J.
The defendant, who is charged with driving while intoxicated as a felony in violation of Vehicle and Traffic Law § 1192 (2) and related charges, makes this pretrial application to suppress the results of a breathalyzer test, absent statutory authority (see, CPL 710.20 [5]) but pursuant to case law authority (see, People v Ruiz, 146 Misc 2d 825),[1] upon the ground that the People will be unable to prove that the chemicals used in conducting the test were of the proper kind and mixed in the proper proportions.
The defendant relies upon the recent decision in People v Uruburu (169 AD2d 20). There the People attempted to establish the foundation for the breathalyzer test result by introducing a State Police laboratory certificate of analysis for the sulfuric acid solution ampoule used. The defendant countered this evidence by producing Leroy Campbell, a former employee of Systems Innovation Inc. (SII), the manufacturer of the ampoules. The implication of his testimony was that there was no correlation between the lot numbers and the batches, so random testing of ampoules bearing a certain lot number did not assure the proper composition of all ampoules bearing that particular lot number. Although Mr. Campbell was unable to testify about the particular lot number involved, the appellate court invoked the presumption of continuity to conclude that SII’s unscientific numbering method continued unabated. The ultimate holding was that the breathalyzer test result was improperly admitted into evidence.
The defendant argues that it is not necessary that Mr. Campbell repeat his testimony at this trial, since Uruburu (supra) established that SII’s designation of ampoule lot numbers was inexact, and that it would be incumbent upon the People to refute Mr. Campbell’s testimony at this trial.[2] The People respond that in the absence of Mr. Campbell’s testimony at this trial, they should be permitted to introduce the traditional foundation evidence in the form of a laboratory certificate.
*990 Two legal theories come into play at this juncture, stare decisis and collateral estoppel.
The doctrine of stare decisis provides that once a court has decided a legal issue, subsequent situations presenting similar facts should be decided in conformity with the earlier decision (see, People v Bing, 76 NY2d 331, 337-338).
The legal principle established in Uruburu (supra) was that whenever a defendant offers evidence of the irresponsible numbering system of SII, in the absence of countervailing proof by the prosecution, the usual certificate of analysis would be an insufficient basis for the admission of the breathalyzer test result. By virtue of this doctrine of stare decisis, all the trial courts in the Fourth Department would be bound to follow this legal principle in all trials where the same factual predicate is demonstrated (see, People v Jackson, 142 Misc 2d 853; People v McMurty, 141 Misc 2d 510; People v Waterman, 122 Misc 2d 489).
However, the doctrine of stare decisis relates to legal principles only and not to facts (1 Carmody-Wait 2d, NY Prac § 2:50). The testimony of Mr. Campbell as to the unorthodox numbering method employed by SII in its ampoule manufacture was the equivalent of a factual predicate and not a legal principle. Absent the testimony of that particular witness or similar evidence at this trial, there would be no state of facts to which the legal principle enunciated in Uruburu (supra) could be applied (see, People v Bing, supra).
Since the doctrine of stare decisis is inapplicable to a factual situation, the validity of the defendant’s claim depends upon the doctrine of collateral estoppel. This term means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future action (People v Goodman, 69 NY2d 32). This principle is also known as issue preclusion (People v Acevedo, 69 NY2d 478). Before this doctrine may be applied, (1) there must be an identity of parties; (2) there must be an identity of issues; (3) there must have been a prior proceeding resulting in a final and valid judgment; and (4) the party opposing the estoppel must have had a full and fair opportunity to litigate (People v Goodman, supra).
The only requisite which is subject to debate in this case is the first one, identity of parties, since although the same District Attorney is involved in both prosecutions, the defendants are obviously not the same.
*991 Support for the defendant’s contention can be found in two analogous cases, People v McGriff (130 AD2d 141) and People v Nieves (106 Misc 2d 395), which circumvented an apparent lack of identity of parties and invoked collateral estoppel. Both cases involved search warrants defective because of a lack of probable cause on the basis of which multiple defendants were arrested, some for felonies and some for misdemeanors. In each case a suppression hearing was first held in the local criminal court for the defendants charged with misdemeanors, and the application for suppression was granted. The prosecutor in each case then sought to relitigate the validity of the search warrant as to those defendants charged with felonies in the superior court, but both courts held he was collaterally estopped. Both courts agreed that the identity of the parties requirement was a flexible one, and the fact that different defendants were parties to two separate suppression motions in no way impacted upon the probable cause determination.
There is a similarity between the two cited decisions and Uruburu (supra) in that all concerned the suppression of evidence and that the resolution as to admissibility was not affected by who the particular defendant was, but there is a critical difference between Uruburu and the instant case in that the two defendants were arrested at different times and were administered different breathalyzer tests.
People v Berkowitz (50 NY2d 333), although not exactly on point because it involved a defendant’s attempted use of a codefendant’s acquittal, and People v Pettaway (153 AD2d 647), because it involved the prosecution’s attempted use of a denial of a codefendant’s suppression motion, are helpful in resolving this issue because they did involve different defendants, as is the case here.
In People v Berkowitz (supra), because a codefendant was found not guilty of conspiracy at her trial, the defendant argued that the doctrine of collateral estoppel precluded his prosecution for conspiracy inasmuch as the codefendant’s jury must have concluded that there was no agreement between the two defendants. The Court of Appeals rejected this claim and declared that "collateral estoppel will apply in a criminal case only if the parties are the same * * * or are so closely related that they may be deemed as one for these purposes” (supra, at 345), and that collateral estoppel in a criminal case does not operate for the benefit of a defendant "whose own *992 interests were not put directly in issue at the prior trial” (supra, at 346).[3]
People v Pettaway (supra) was a case which considered a situation opposite to that in McGriff (supra) and Nieves (supra). There a prior hearing resulted in a denial of a codefendant’s motion to suppress evidence seized pursuant to a search warrant, and the prosecutor proffered collateral estoppel to bar the defendant from attacking the same search warrant. The appellate court refused to find collateral estoppel applicable there, because the defendant was not represented at the prior hearing, the defendant was not a party to that hearing and the defendant’s relationship to his codefendant was not sufficiently close.[4]
Comparing Uruburu (supra) with this case, it is manifest that the defendants are not the same, the defendants are not so closely related that they may be deemed to be one and this defendant’s interest was not put directly in issue at the Uruburu trial. Thus, this absence of an identity of parties obviates the defendant’s invocation of collateral estoppel to avoid calling Mr. Campbell to testify at this trial.
There is another facet of this predicate, a proposition advanced by the People, that should the People respond at this trial with extraordinary foundational evidence to rebut Mr. Campbell’s testimony at the Uruburu trial,[5] such evidence should collaterally estop defendants in all similar trials succeeding this trial.
There are no cases to support this proposal either. People v Plevy (52 NY2d 58), People v Guy (121 AD2d 741), and People v Scott (93 Misc 2d 1074) all held that a defendant who was unsuccessful in his first suppression motion concerning one charge was precluded from relitigating that same issue at a *993 second hearing regarding another charge.[6] So, collateral estoppel is available to the People where the same defendant is involved, but not in those instances where they seek to apply it to nonrelated defendants (People v Pettaway, supra; People v Nieves, supra).
However, assuming that collateral estoppel could be invoked by both parties in this case, the result would be very impractical. Mr. Campbell’s testimony in Uruburu (supra) would eliminate the necessity for his testimony at this trial and at future similar trials. The presentation of Mr. Dugan or Mr. Fies[7] at this trial as a witness would presumably counteract Mr. Campbell’s testimony in Uruburu,[8] and such evidence then need not be adduced at future similar trials. That would mean that the People could again rely upon the traditional foundation evidence, i.e., the laboratory certificate, and information concerning SII’s problem with ampoules would be withheld from the jury.[9] This is not a consequence the criminal justice system should tolerate, "because the preeminent concern in criminal cases is to reach [the] correct result” (People v Goodman, supra, at 37).
Accordingly, the application of the defendant to preclude the People from offering the breathalyzer test result at this trial, unless they first indicate that they intend to present nontraditional evidence to counteract Mr. Campbell’s testimony in Uruburu (supra), is denied.

. People v Uruburu (169 AD2d 20, 27, n 1) noted the use of this procedure by the trial courts but expressed no opinion as to its propriety.

. Presumably, the People would have to call Michael Dugan, an SII employee who testified in opposition to Mr. Campbell in People v Urquhart (Rochester City Ct, Jan. 23, 1989), or William Fies, another SII employee, who likewise testified against Mr. Campbell in People v Pantaleo (NYLJ, Sept. 20, 1989, at 22, col 4).

. The reasons for this conclusion were enumerated by the court, e.g., only one of the defendants may have made an incriminating statement (People v Berkowitz, 50 NY2d 333, 346). Concededly none of those reasons is applicable here, but the court did not relate those reasons to that particular defendant either.

. People v Nieves (106 Misc 2d 395) disregarded the People’s argument that since collateral estoppel was apparently not available to the People, it would be unfair to allow the defendant to use that concept to take advantage of a ruling favorable to his codefendants in another proceeding; in that respect it coincides with People v Pettaway (153 AD2d 657).

. The jury might wonder why the prosecutor was apparently introducing needless evidence if Mr. Campbell did not testify at this trial.

. This was not the exact determination in People v Plevy (52 NY2d 58), but it can easily be inferred.

. These two employees were referred to in footnote 2 (supra).

. This is exactly what happened in People v Urquhart (supra), where the pretrial motion to suppress was denied, but neither side has advocated that this constituted collateral estoppel.

. Of course, if a defendant called Mr. Campbell as a witness, the prosecutor would have to produce evidence to rebut such testimony.