OPINION OF THE COURT
Edgar G. Walker, J.
The defendant in this case met and married the complainant while in the Philippines in September 1991. The defendant returned to the United States in October 1991, leaving his bride behind.
One year later, in October 1992, the complainant arrived in this country and took up residence with the defendant in his mother’s house in Bronx County. At first they were just like newlyweds, but their relationship quickly deteriorated. On October 14, 1992, only six days after her arrival in this country, the complainant was at the 47 th Precinct, telling Police Officer Richard Smith that her husband had just beaten her the day before and that on a previous occasion during her brief stay in the Bronx he had threatened her with a gun.
After the incident of October 13, 1992 the defendant told the complainant their marriage was over, gave the complainant a return ticket to Manila and ordered her to leave immediately. Only a few hours later the complainant was out on the street walking away from the house, despite the fact that the defendant hadn’t seen any need to give her a key to the house because "[s]he didn’t know her way around to go anywhere other than through me. I was always with her. She didn’t speak English that well.”
After hearing her story, Officer Smith and his partner drove with the complainant to the marital residence. During the drive over the complainant told the police that the defendant kept the gun in a drawer in the bedroom she shared with the defendant.
When they arrived at the house the police knocked on the door. The defendant’s mother, Vivian Veal, responded and opened the door. The police told Ms. Veal that they wanted to speak with her son. There is a discrepancy in the testimony as to what happened next which is unnecessary for the court to resolve. According to Officer Smith, Ms. Veal let them in, but according to Ms. Veal she tried to close the door and the police prevented her from doing so and rushed into the house.
When they entered the house the police saw the defendant *714 coming down the stairs. Officer Smith went upstairs and told the defendant to sit down and relax. His partner followed Officer Smith up the stairs along with the complainant.
When they were all in the bedroom the police asked the complainant where the gun was at which point she went over to a drawer, opened it and said it was in there. Officer Smith’s partner then reached in and picked up the gun.
The police asked the defendant if that was his gun and if he had a permit. He said no, he didn’t have a permit. He found the gun years ago and he just kept it. He wasn’t sure if it was real or loaded. The defendant was then placed under arrest.
The defendant has moved to suppress the gun and his statement as the fruit of an illegal warrantless entry into his home and also, as to the statement, the product of unlawful custodial interrogation. He admits that the police had the consent of the complainant to enter but contends that since he threw her out of the house the day before she had no authority to consent to the entry.
It is undisputed that up until October 13, 1992 Ms. Veal’s house was the marital residence of both the defendant and complainant and that she kept her possessions and slept in the room in which the gun was found. It is also undisputed that the complainant had no other residence, at least in this country. Nor does it even appear that Ms. Veal, the owner of the house, ever excluded the complainant from her residence.
Under these circumstances, the unilateral act of the defendant cannot serve to deprive the complainant of her equal right of access to and possession of the marital residence. Neither party to a marriage has the right to exclude the other from the marital residence in the absence of a court order, and even during the pendency of a matrimonial action a court may not grant exclusive possession absent a showing that such a directive is necessary to protect the safety of persons or property. (Purdy v Purdy, 117 AD2d 659; Harkavy v Harkavy, 93 AD2d 879.)
In the absence of any order granting the defendant exclusive possession of the martial residence, the complainant had the authority to consent to the warrantless entry of the police. (People v Cosme, 48 NY2d 286.) The defendant’s contention that the reliance of the police upon the complainant’s consent was unreasonable under People v Adams (53 NY2d 1) need not be addressed. Only if the complainant did not have authority would the police officer’s reasonable belief be needed *715 to validate what was otherwise an unauthorized entry. Because the complainant had actual authority to consent, the entry is valid regardless of whether there were sufficient objective indicia of this authority. (People v Adams, supra.)
Defendant’s motion to suppress the gun and statement as the fruit of an illegal warrantless entry into his home is, therefore, denied.
Defendant’s additional claim that his statement was the product of custodial interrogation conducted without informing him of his rights under Miranda v Arizona (384 US 436) is also denied. This case is indistinguishable from People v Rosen (112 AD2d 253). Regardless of whether or not the defendant was in custody when asked about the gun, that question "did not constitute a process of interrogation to which Miranda is applicable”. (People v Huffman, 41 NY2d 29, 34.)
Defendant’s motion to suppress is, therefore, denied in its entirety.